## I UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS O. NESBETH, AMIT GODAMBE, JENNY GALLERY, MISTY HOWELL and MICAH WEBB, individually and on behalf of all others similarly situated, | ) ) ) ) ) | **CIVIL ACTION NO.: 2:21-cv-01444-PD** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ICON CLINICAL RESEARCH, LLC, THE BOARD OF DIRECTORS OF ICON CLINICAL RESEARCH, LLC, THE 401(K) PLAN COMMITTEE OF ICON CLINICAL RESEARCH, LLC and JOHN DOES 1-30. | ) ) ) ) ) ) | |

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS CARLOS O. NESBETH, AMIT GODAMBE, JENNY GALLERY, MISTY HOWELL, AND MICAH WEBB'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF CLASS NOTICE, APPROVAL OF PLAN OF ALLOCATION, AND SCHEDULING OF A FAIRNESS HEARING**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   THE PROPOSED SETTLEMENT ...............................................................1

III.  THE PROPOSED SETTLEMENT NOTICE PLAN SHOULD BE
APPROVED ................................................................................................2

    A.    Legal Standard.................................................................................2

    B.    The Settlement Satisfies the *GMC* Factors Underscoring its
Fairness............................................................................................3

           1.    Arms' Length Negotiations..................................................3

           2.    Amount of Discovery...........................................................4

           3.    Experience of Counsel ........................................................5

           4.    Objections ...........................................................................5

    C.    The Third Circuit's *Girsh* Factors are also Satisfied ...........................5

           1.    The Complexity, Expense, and Likely Duration of the
Litigation ...........................................................................5

           2.    The Reaction of the Class to the Settlement .............................6

           3.    The Stage of the Proceedings and the Amount of
Discovery Completed...........................................................6

           4.    The Risks of Establishing Liability and Damages.....................7

           5.    The Risks of Maintaining the Class Action Through Trial ........8

           6.    The Ability of the Defendants to Withstand a Greater
Judgment ............................................................................9

           7.    The Range of Reasonableness of the Settlement Fund in
Light of the Best Possible Recovery and in Light of all
Attendant Risks of Litigation....................................................10

8.     The Requirements of FED. R. CIV. P. 23(e)(2) Also Are or Likely Will Be Satisfied............................................................11

IV.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ................13

    A.   The Proposed Notice Plan Meets the Requirements of Due Process ................................................................................................13

    B.   Description of the Notice Plan .........................................................14

V.    CLASS CERTIFICATION IS APPROPRIATE ...........................................15

    A.   The Proposed Class Satisfies the Requirements of Rule 23(a)...........16

        1.     The Class is Sufficiently Numerous .........................................16

        2.     Common Questions of Law and Fact Abound .........................17

        3.     Plaintiffs' Claims are Typical of the Class ..............................18

        4.     Plaintiffs and Class Counsel Will Adequately Protect the Interest of the Class...................................................................19

            i.     Plaintiffs Have No Conflicts With Other Members of the Class and Will Vigorously Prosecute This Action On Behalf of the Class .........................................19

            ii.    Plaintiffs' Counsel Have No Conflicts With the Class, Are Qualified and Experienced, and Will Vigorously Prosecute This Action for the Class.............20

    B.   The Class May Be Properly Certified Under Rule 23(b)(1) ..............22

        1.  Certification Under Rule 23(b)(1)(B) Is Most Appropriate...........23

        2.  Certification is Also Appropriate Under Section 23(b)(a)(A) .......24

VI.   CONCLUSION.........................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475(S.D. Ill. July 17, 2015) ............................................................13

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591(1997) ...................................................................................22, 23

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) .......................................................................19

*Beesley v. Int'l Paper Co.*,
2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ............................................................13

*Boley, et al. v. Universal Health Servs., Inc., et al.*,
2021 WL 859399 (E.D. Pa. Mar. 8, 2021) ............................................................22

*Brieger v. Tellabs, Inc.*,
659 F. Supp. 2d 967 (N.D. Ill. 2009) .........................................................8

*In re: Cendant Corp. Litig.*,
264 F.3d 201, 239 (3d Cir. 2001) ...............................................................7

*Clark v. Duke Univ.*,
2018 WL 1801946 (M.D.N.C. April 13, 2018) .....................................................24

*In re Flonase Antitrust Litig.*,
951 F.Supp.2d 739 (E.D. Pa. 2013) ...........................................................7

*Fulton-Green v. Accolade, Inc.*,
No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019).....................................19

*In re: Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)............................................................... Passim

*Girsh v. Jepson*,
521 F.2d 153 (3d. Cir. 1975)............................................................ Passim

*Halley v. Honeywell Int'l, Inc.*,
861 F.3d 481 (3d Cir. 2017)...................................................................5

*Harry M. v. PA Dept. of Public Welfare*,
2013 WL 1386286 (M.D. Pa. Apr. 4, 2013).........................................3,13

*In re: Honeywell Int'l Sec. Litig.*,
211 F.R.D. 255 (D.N.J. 2002)...............................................................17

*In re Ikon Office Solutions, Inc.*,
191 F.R.D. 457 (E.D. Pa. 2000)............................................................16

*In re: Janney Montgomery Scott LLC Fin. Consult. Litig.*,
No., 2009 WL 2137224 (E.D. Pa. July 16, 2009).....................................15

*Jones v. NovaStar Fin., Inc.*,
257 F.R.D. 181 (W.D. Mo. 2009)..........................................................25

*Karg et al. v. Transamerica Corp.*,
2020 WL 3400199 (N.D. Iowa Mar. 25, 2020) ....................................17, 18, 21, 22

*Koch v. Dwyer*,
No. 98-CV-5519, 2001 WL 289972 (S.D.N.Y. Mar. 23, 2001).............................24

*Krueger v. Ameriprise Financial*,
2015 WL 4246879 (D. Minn. July 13, 2015) .........................................13

*Kruger v. Novant Health, Inc.*,
2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) .......................................13

*In re: Linerboard Antitrust Litig.*,
321 F. Supp. 2d 619 (E.D. Pa. 2004) .......................................................9

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985)............................................................................24

*McDonald v. Edward Jones*,
791 Fed.Appx. 638 (8th Cir. 2020) ............................................................... 13

*In re: Merck & Co., Inc. Securities, Derivative & ERISA Litig.*,
MDL No. 1658, 2009 WL 331426 (D.N.J. Feb. 10, 2009) .............................. 16, 25

*Moore v. Comcast Corp.*,
268 F.R.D. 530 (E.D. Pa. 2010) ............................................................... 16, 17, 24

*Moore v. Simpson*,
1997 WL 570769 (N.D. Ill. Sept. 10, 1997) ...................................................... 17

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ......................................................................................... 136

*In re: Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016) ("*NFL*") ................ Passim

*In re: New Jersey Tax Sales Certification Antitrust Litig.*,
750 Fed.Appx 73 (3d Cir. 2018) ...................................................................... 3, 5

*In re: Nortel Networks Corp. ERISA Litig.*,
2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009) ................................................... 25

*Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ....................................................................... 4, 7, 10

*Reibstein v. Rite Aid Corp.*,
761 F.Supp.2d 241 (E.D. Pa. 2011) ................................................................... 9

*In re: Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003) .................................................................. 8

*In re: Schering-Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ..................................................................... 8, 16, 23

*In re Schering-Plough Enhance ERISA Litig.*,
2012 WL 1964451 (D.N.J. Dec. 16, 2010) .......................................................... 16

*Sims v. BB&T Corp.*,
2017 WL 3730552 (M.D.N.C. Aug. 28, 2017)........................................................18

*Spano v. The Boeing Co.*,
2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ........................................................13

*Stanford* v. *Foamex, L.P.*,
263 F.R.D. 156 (E.D. Pa. 2009)............................................................16, 18, 20, 25

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011)......................................................................................9

*Thomas v. SmithKline Beecham Corp.*,
201 F.R.D. 386 (E.D. Pa. 2001)..............................................................................17

*Tracey v. Mass. Inst. Tech.*,
2018 WL 5114167 (D. Mass. Oct. 19, 2018) .........................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)................................................................................................17

*In re: Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)........................................................................2, 6, 7, 9

## STATUTES

FED. R. CIV. P. 23 ................................................................................................21, 22

FED. R. CIV. P. 23(a) ..........................................................................................15, 16

FED. R. CIV. P. 23(a)(1) ............................................................................................16

FED. R. CIV. P. 23(a)(2) ............................................................................................17

FED. R. CIV. P. 23(a)(4) ............................................................................................19

FED. R. CIV. P. 23(b) ................................................................................................16

FED. R. CIV. P. 23(b)(1) ................................................................................22, 23, 24

FED. R. CIV. P. 23(b)(1)(A) ................................................................................24, 25

FED. R. CIV. P. 23(b)(1)(B) ............................................................................23, 24, 25

FED. R. CIV. P. 23(b)(1)(B)(i) ..............................................................................3, 12, 13

FED. R. CIV. P. 23(b)(2).........................................................................................25

FED. R. CIV. P. 23(b)(3).........................................................................................22, 23

FED. R. CIV. P. 23(c)(2).........................................................................................13

FED. R. CIV. P. 23(e)..............................................................................................15

FED. R. CIV. P. 23(e)(2)..........................................................................................3, 11, 12

FED. R. CIV. P. 23(e)(2)(C)(ii)................................................................................12, 13

FED. R. CIV. P. 23(e)(2) (C)(iii) and (D)................................................................12

FED. R. CIV. P. 23(e)(2)(D) ...................................................................................12, 13

FED. R. CIV. P. 23(e)(3)..........................................................................................12

FED. R. CIV. P. 23(g) ..............................................................................................21

FED. R. CIV. P. 23(g)(1)(A) ....................................................................................21

FED. R. CIV. P. 23(g)(1)(B) ....................................................................................21

**Other Sources**

Employee Retirement Income Security Act of 1974 ("ERISA") ........................1, 16

## I.    INTRODUCTION

Plaintiffs Carlos O. Nesbeth, Amit Godambe, Jenny Gallery, Misty Howell, and Micah Webb (together, "Plaintiffs"), participants in the ICON Clinical Research, LLC 401(k) Plan (the "Plan"), commenced this action against Defendants[1] (together with the Plaintiffs, the "Parties") on March 26, 2021 with the filing of the Complaint (ECF No. 1).[2]   The Complaint alleged Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to prudently manage the Plan.   Defendants strongly dispute Plaintiffs' allegations, maintain that the Plan has been prudently managed throughout the relevant period, and deny liability for the alleged ERISA violations.

After arms' length negotiations over several weeks the Parties agreed to a Settlement of $950,000.00 on December 23, 2021.   Over the last few weeks, the Parties have negotiated the specific terms of the Settlement Agreement and present it now for the Court's preliminary approval.[3]

## II.    THE PROPOSED SETTLEMENT

---

[1] "Defendants" herein refers to ICON Clinical Research LLC ("ICON"), The Board of Directors of ICON Clinical Research, LLC (the "Board"), The 401(k) Plan Committee of ICON Clinical Research LLC and its members (the "Committee").

[2] The full procedural history of this matter is recounted in the Declaration of Mark K. Gyandoh ("Gyandoh Decl."), filed contemporaneously with this memorandum, at ¶¶ 3-13.

[3] The Settlement Agreement itself, attached to the Gyandoh Decl. as Exhibit 1, has several exhibits.   These exhibits are: A (Settlement Notice); B (Plan of Allocation); C (Preliminary Approval Order); D (Final Order); and E (CAFA Notice).   Capitalized terms herein shall have the meaning ascribed to them in the Settlement Agreement.

Defendants and/or their insurer will pay $950,000.00 to the Plan to be allocated to participants pursuant to a Court-approved Plan of Allocation.[4]  *See* Gyandoh Decl., ¶ 30.  The Settlement Agreement also provides for the payment of attorneys' fees of no more than 33 1/3% of the Gross Settlement Amount, and Plaintiffs' Case Contribution Awards of no more than $10,000 per Plaintiff.  *See* Gyandoh Decl., ¶ 37.  The "Settlement Class" is defined as:

> all persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period.  Excluded from the Settlement Class are Defendants and their Beneficiaries.

*See* Settlement Agreement at ¶ 1.44.  The "Class Period" refers to "the period from March 26, 2015, through the date of the Preliminary Approval Order."  *Id.* at ¶ 1.13.

## III.   THE PROPOSED SETTLEMENT NOTICE PLAN SHOULD BE APPROVED

### A. Legal Standard

"[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *In re: Warfarin Sodium Antitrust Litig.*, 391

---

[4] The Plan of Allocation, attached to the Settlement Agreement as Exhibit B, is premised on calculating a Plan participant's pro rata distribution based upon the individual's balances in the Plan during the Class Period.  *See also* Gyandoh Decl., ¶¶ 33, 36.

F.3d 516, 535 (3d Cir. 2004) ("*Warfarin*").   "Review of a proposed class action settlement involves a two-step process:   preliminary approval and a subsequent fairness hearing."   *Harry M. v. PA Dept. of Public Welfare*, 2013 WL 1386286, at *1 (M.D. Pa. Apr. 4, 2013).   At the preliminary approval stage, courts must apply the *GMC* test to determine whether:  "(1) the negotiations occurred at arm's length; (2)  there  was  sufficient  discovery;  (3)  the  proponents  of  the  settlement  are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re: Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785  (3d  Cir.  1995)  ("*GMC*").   If  these  factors  are  satisfied,  the  settlement  is presumed to be fair.  *Id.*  At the final approval stage, the district court must determine whether "the proposed settlement is 'fair, reasonable and adequate.'"   *In re: New Jersey Tax Sales Certification Antitrust Litig.*, 750 Fed.Appx 73, 77 (3d Cir. 2018) ("*NJ Tax Sales*"), quoting FED. R. CIV. P. 23(e).   To make this determination, courts in this circuit employ the more rigorous test set forth in *Girsh v. Jepson*, 521 F.2d 153,157 (3d. Cir. 1975).

Preliminary  approval  should  also  be  granted,  and  notice  to  the  class authorized, if "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)."  FED. R. CIV. P. 23(e)(1(B)(i).

### B. The  Settlement  Satisfies  the *GMC* Factors  Underscoring  its Fairness

#### 1.  Arms' Length Negotiations

Settlement negotiations were certainly arm's-length, readily satisfying the first prong of the *GMC* test. The Parties were engaged in settlement negotiations for several months and exchanged numerous emails, phone calls, and letters prior to arriving at the settlement in principle. *See* Gyandoh Decl., ¶¶ 24-32.

### 2. Amount of Discovery

Parties should have an "adequate appreciation" of the merits in settling a case. *Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998) ("*Prudential*") (citing *GMC,* 55 F.3d at 813). The discovery efforts in this Action were substantial. *See* Gyandoh Decl., ¶¶ 14-23. The Parties exchanged Rule 26(a)(1) Disclosures and exchanged document requests and interrogatories resulting in Defendants producing nearly five-thousand pages of documents. Additionally, each of the Named Plaintiffs presented for a deposition.[5] From independent research, discovery productions, and depositions, Plaintiffs' counsel, in consultation with Plaintiffs' consulting expert witness, were able to assess the strengths and weaknesses of Plaintiffs' claims, as well as calculate potential Class-wide damages. *See* Gyandoh Decl., ¶¶ 3, 32. The second *GMC* prong is thus amply satisfied.

---

[5] Deposition of Carlos Nesbeth took place on October 27, 2021; deposition of Amit Godambe took place on November 5, 2021; deposition of Jenny Gallery took place on October 26, 2021; deposition of Misty Howell took place on November 4, 2021; deposition of Micah Webb took place on October 25, 2021. Gyandoh Decl. ¶¶ 19-23.

### 3.  Experience of Counsel

Third, both Plaintiffs' counsel and Defendants' counsel are experienced in ERISA class actions of this type and approve of the Settlement.  As discussed in greater detail *infra*, Section III.C, the vast experience of Class Counsel in analogous actions weighs strongly in favor of the fairness of the proposed Settlement, a Settlement which Class Counsel firmly stands behind. Gyandoh Decl., ¶¶ 32, 39-49. Counsel for Defendants, who have agreed to the Settlement, are also one of the preeminent firms in the country defending analogous ERISA class actions.

### 4.  Objections

The fourth prong of the *GMC* test is not fully assessable at this time because notice to proposed Class members has not yet been provided.

### C. The Third Circuit's *Girsh* Factors are also Satisfied

Although satisfaction of the *GMC* test is sufficient for preliminary approval, the Settlement also meets the more exacting approval standard articulated by the Third Circuit in *Girsh* and in Rule 23(e)(2).  A court may approve a settlement even if it does not find all of these factors militate in favor of approval.  *NJ Tax Sales*, 750 Fed. Appx. at 77, citing *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 489-90, 491 (3d Cir. 2017) (affirming settlement approval where some factors did not weigh in favor of settlement).

### 1.  The Complexity, Expense, and Likely Duration of the Litigation

"The first factor 'captures the probable costs, in both time and money, of continued litigation.'"  *In re: Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016), *as amended* (May 2, 2016) ("*NFL*") (quoting *Warfarin*, 391 F.3d at 535-36 (internal quotation omitted)).  Here, the probable costs of continued litigation with respect to both time and money are high. Considerable additional discovery, both paper and testimonial, would be required before the case would be trial ready, and there would be voluminous briefing ahead in the absence of the proposed Settlement.  The Settlement in this Action comes at an opportune time given, if the litigation continues, there would be substantial expense to the Parties associated with necessary factual and expert discovery and assorted motion practice.

### 2.  The Reaction of the Class to the Settlement

As noted in Section III.B.4 *supra*, analysis of this factor is premature as notice of the proposed Settlement will be disseminated to the Settlement Class only after this Court grants preliminary approval of the Settlement.

### 3.  The Stage of the Proceedings and the Amount of Discovery Completed

As with the second prong of the *GMC* test, pursuant to the third *Girsh* factor, the Court must consider the "degree of case development that Class Counsel have accomplished prior to Settlement," including the type and amount of discovery already undertaken.  *GMC*, 55 F.3d at 813.  "Through this lens, courts can determine

whether counsel had an adequate appreciation of the merits of the case before negotiating." *NFL*, 821 F.3d at 438-39 (3d Cir. 2016), quoting *Warfarin*, 391 F.3d at 537 (internal quotation omitted). As discussed *supra*, and in Plaintiffs' Counsel's declaration, the totality of the Parties' discovery efforts favors approval of the Settlement.

### 4. The Risks of Establishing Liability and Damages

The fourth and fifth *Girsh* factors, which require examination of the risks of establishing liability and damages respectively, are "closely related" and therefore are properly addressed together. *In re Flonase Antitrust Litig.*, 951 F.Supp.2d 739, 744 (E.D. Pa. 2013). "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them," *GMC*, 55 F.3d at 814, and these inquiries "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Prudential*, 148 F.3d at 319; *see also In re: Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001), quoting *GMC*, 55 F.3d at 816.

Regarding establishing liability Defendants have already moved for summary judgment, which establishes a risk that Defendants would prevail before trial. Also, in this complex ERISA Action, Plaintiffs would proffer their liability and damages

experts, which would undoubtedly be countered by Defendants' proffered experts. Ultimately, a battle of experts presenting differing damages calculations would ensue and the factfinder "would therefore be faced with competing expert opinions representing very different damage estimates[,] . . . adding further uncertainty." *In re: Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003). Although a trial on the merits in any case always entails some risk, in the context of ERISA breach of fiduciary duty class actions, the risk is even more considerable. Indeed, the undersigned is particularly qualified to realistically evaluate the risks of continued litigation, as he tried an analogous case to an unfavorable verdict for plaintiffs in *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009).

### 5. The Risks of Maintaining the Class Action through Trial

The sixth *Girsch* factor requires the Court to examine the risks of maintaining the class-action through trial due to the fact "[t]he value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits." *GMC*, 55 F.3d at 817. "Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action." *Id.*

The Third Circuit has referred to ERISA derivative actions brought on behalf of a plan and its participants, such as the instant Action, as "paradigmatic examples

of claims appropriate for certification as a Rule 23(b)(1) class." *In re: Schering-Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("*Schering-Plough ERISA*"). However, the Court had yet to rule on class certification at the time the Parties agreed to the proposed Settlement, and Defendants had already asserted arguments in opposition to Plaintiffs' motion for class certification. This factor too militates in favor of settlement as the settlement eliminates the risks of not being able to establish and maintain the class through trial.

### 6. The Ability of the Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor requires the Court to consider "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *Warfarin*, 391 F.3d at 537-38. The Third Circuit has noted, "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011). This is because, "when there is no 'reason to believe that Defendants face any risk of financial instability[,] . . . this factor is largely irrelevant.'" *In re: Nat'l Football League Players Concussion Injury Litig.*, 307 F.R.D. 351, 394 (E.D. Pa. 2015) (quoting *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241, 254 (E.D. Pa. 2011)). Thus, "the settling defendant's ability to pay greater amounts [may be] outweighed by the

risk that the plaintiffs would not be able to achieve any greater recovery at trial." *In re: Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004).

While ICON could likely withstand a judgment in an amount larger than the Settlement amount, the risks and expenses attendant to continuing this litigation, combined with the immediacy of the benefit to Settlement Class members, easily outweigh this factor.

> ### 7.  The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all Attendant Risks of Litigation

"According to *Girsh*, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and a range in light of all the attendant risks of litigation (the ninth [*Girsh*] factor)." *GMC*, 55 F.3d at 806.  To assess the reasonableness of a settlement in a case such as this, seeking primarily monetary relief, a court should compare "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement." *NFL,* 821 F.3d at 440, quoting *Prudential*, 148 F.3d at 322 (internal quotation omitted).  In determining the range of recovery in this Action, at one extreme is the possibility Defendants might prevail on one or more of their legal or factual arguments to defeat liability entirely.  While Plaintiffs are confident of the

strength of the claims asserted, they recognize this possibility cannot be discounted completely.

If this case were to proceed to trial, Plaintiffs believe the realistic maximum damages are no more than $1.9 million before pre-judgment interest, which is based on Plaintiffs' overlapping allegations the Plan funds were invested in the wrong share class of several of the Plan's funds for much of the Class Period and the Plan fiduciaries overpaid for recordkeeping and administrative services using in part money collected from the excessive expense ratios of the Plan's funds. Defendants have maintained these allegations are meritless.

Moreover, Plaintiffs' figures are dependent on the Court finding Defendants' fiduciary breaches to have occurred by the start of the Class Period on March 26, 2015. But there is no guarantee this date would ultimately prevail or Plaintiffs otherwise would be successful in establishing liability. The use of a later breach date and/or a determination the challenged decision-making processes was prudent could result in a recovery well below the $950,000.00 settlement amount or no recovery at all. Given this wide range of potential damage outcomes at trial and the uncertainty of the Plan's actual losses, the $950,000.00 monetary settlement is fair and reasonable.

### 8. The Requirements of FED. R. CIV. P. 23(e)(2) Also Are or Likely Will Be Satisfied

Rule 23(e)(1)(B)(i), as amended, provides preliminary approval should be granted, and notice to the class authorized, if "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)." FED. R. CIV. P. 23(e)(1(B)(i). Rule 23(e)(2) now primarily combines portions of the *GMC* test with several of the *Girsh* factors.[6] As a result, because the instant Settlement satisfies the *GMC* test and the *Girsh* factors, the requirements of Rule 23(e)(2) are substantially met for purposes of both preliminary and final approval. The three factors not encompassed by the *GMC* test and the *Girsh* factors the Court is to consider when determining whether to grant **final** approval are: (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (2) "the terms of any proposed award of attorney's fees, including timing of payment"; and (3) whether "the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) and (D).

As detailed *infra*, Section IV, the proposed Notice Plan submitted by the Parties comports with due process. This, combined with the Plan of Allocation, satisfies the requirement of Rule 23(e)(2)(C)(ii). Additionally, a proposed maximum of 33 1/3% of the Settlement Amount in attorneys' fees is contained in the proposed Class Notice. This amount is in line with analogous awards in ERISA class action

---

[6] Rule 23(e)(3) requires "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). There are no agreements, other than the Settlement itself, in this case.

cases and will likely be approved by the Court, so the requirement of Rule 23(e)(2)(C)(ii) will likely be met.[7]  Finally, the Plan of Allocation submitted by the parties clearly treats class members equitably relative to each other, thereby satisfying the requirement of Rule 23(e)(2)(D).  Here, the Court can easily determine it is likely to grant final approval under Rule 23(e)(2), so preliminary approval is appropriate under Rule 23(e)(1)(B)(i).

## IV.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A. The Proposed Notice Plan Meets the Requirements of Due Process

In addition to preliminarily approving the Settlement Agreement, the Court must also approve the proposed means of notifying class members.  FED. R. CIV. P. 23(c)(2); *see also Harry M.*, 2013 WL 1386286, at *2.  "Adequate notice is essential to securing due process of law for the class members, who are bound by the judgment entered in the action."  *Harry M.*, 2013 WL 1386286, at *2.  In order to satisfy due process considerations, notice to Settlement Class Members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane*

---

[7] *See McDonald v. Edward Jones*, 791 Fed.Appx. 638, 640 (8th Cir. 2020) (affirming judgment awarding the class counsel attorneys' fees of 1/3 of the settlement fund); *see also Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016); *Spano v. The Boeing Co.,* 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016); *Abbott v. Lockheed Martin Corp*., 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015); *Krueger v. Ameriprise Financial*, 2015 WL 4246879, at *4 (D. Minn. July 13, 2015); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).

*v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted).

As set forth below, Plaintiffs' proposed means of providing Notice to the Settlement Class readily satisfies this standard as well as the mandates of due process.  The combination of direct mail and publication of the Settlement Notice on a dedicated website should cause actual notice to reach a very high percentage of affected Plan participants and beneficiaries.

### B. Description of the Notice Plan

As an initial matter, Class Counsel has asked the Court to approve the selection of JND Legal Administration as the Settlement Administrator for the Settlement.  *See* Preliminary Approval Order, ¶ 8.  JND is an industry leader in class action settlement administration and has successfully handled dozens of class settlements.  *See* https://www.jndla.com/class-action-administration.

The Settlement Notice plan includes multiple components designed to reach the largest number of Settlement Class members possible.  First, the Settlement Class Notice will be sent via First Class mail, postage prepaid, to the last known address of each Settlement Class Member within (30) days of the Court's order granting preliminary approval of the Settlement.  Settlement Agreement, Art. 2, §§ 1.46, 2.4, and 14.20.  Additionally, by the same date, the Settlement Class Notice, along with other litigation-related documents such as a list of frequently asked questions and

the Settlement Agreement with all of its Exhibits, will be posted on a dedicated Settlement website established by Plaintiffs' counsel.   The Class Notice also provides contact information for Class Counsel.  Class Notice, p. 2.  Class Counsel also will establish and monitor a dedicated, toll-free Settlement telephone number with an Interactive Voice Response system which will have answers to frequently asked questions and also provide to Settlement Class Members the opportunity to leave a voicemail for Class Counsel should they have any additional questions regarding the Settlement.

The Settlement Notice Plan agreed to by the Parties satisfies all due process considerations and meets the requirements of FED. R. CIV. P. 23(e).[8]

## V.   CLASS CERTIFICATION IS APPROPRIATE

Plaintiffs seek preliminary certification of the defined Settlement Class (*see* Section II *supra*).   At the preliminary approval stage, when the court has not previously certified a class, it may preliminarily certify a class for purposes of providing notice, leaving the final certification decision for the subsequent final Fairness Hearing.   To be certified, a class must first satisfy the four basic prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4)

---

[8] Indeed, individual notice by First Class mail alone has been recognized by this Court as a manner of delivery of notice which comport with due process.  *See In re: Janney Montgomery Scott LLC Fin. Consult. Litig.*, No., 2009 WL 2137224, at *7 (E.D. Pa. July 16, 2009).  Plaintiffs' proposed Settlement Notice plan goes well beyond individual notice by First Class mail, further underscoring its fairness and appropriateness.

adequacy of representation.  FED. R. CIV. P. 23(a); *In re: Schering-Plough Corp. ERISA Litig.*, 589 F.3d 585, 596 (3d Cir. 2009); *Moore v. Comcast Corp.*, 268 F.R.D. 530, 535 (E.D. Pa. 2010).   Plaintiffs have satisfied all four elements of Rule 23(a). In this matter, the proposed Settlement Class (identified in the Settlement Agreement and Section II *supra*) satisfies each of the prerequisites of Rule 23(a) as well as at least one of the alternate requirements of Rule 23(b).

Precedent, including from within the Third Circuit, is clear these types of ERISA § 502(a)(2) breach of fiduciary duty claims are well-suited for class status as they are brought, by definition and in practice, on behalf of retirement plans and affected participants.[9]

### A. The Proposed Class Satisfies the Requirements of Rule 23(a)

#### 1.  The Class is Sufficiently Numerous

Rule 23(a)(1) calls for certification if "the class is so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  When there "are thousands of participants in [a] plan in any given year," the court "should make common sense assumptions regarding numerosity."  *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 462 (E.D. Pa. 2000) (numerosity satisfied in analogous ERISA breach of

---

[9] *See, e.g.*, *In re: Merck & Co., Inc. Securities, Derivative & ERISA Litig.*, MDL No. 1658, 2009 WL 331426, at *10-12 (D.N.J. Feb. 10, 2009); *Stanford* v. *Foamex, L.P.*, 263 F.R.D. 156, 175 (E.D. Pa. 2009); *In re Schering-Plough Enhance ERISA Litig.*, 2012 WL 1964451 (D.N.J. Dec. 16, 2010); *Moore*, 268 F.R.D. at 538.

fiduciary duty case where there were thousands of plan participants); *see also Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 391 (E.D. Pa. 2001). Here, numerosity is clearly satisfied because there were at least 7,000[10] participants each year during the Class Period.

### 2. Common Questions of Law and Fact Abound

Plaintiffs must also demonstrate the existence of common questions of law or fact. FED. R. CIV. P. 23(a)(2). Commonality involves "the capacity of a class[-]wide proceeding to generate common *answers* apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). This Action presents many common questions of law and fact, applicable to all members of the Settlement Class, including: (1) whether Defendants were fiduciaries of the Plan; (2) whether the Plan and the Participants were injured by such breaches; and (3) whether the Class is entitled to damages. "All of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2) because they all address common issues of owed fiduciary responsibility to the plan participants." *Moore v. Simpson*, 1997 WL 570769, at *4 (N.D. Ill. Sept. 10, 1997). Consequently, Plaintiffs demonstrate a "level of commonality more than sufficient under Rule 23(a)(2)." *In re: Honeywell Int'l Sec. Litig.*, 211 F.R.D. 255, 260 (D.N.J. 2002); *See also Karg et al. v. Transamerica Corp.*, 2020 WL 3400199, at * 2 (N.D. Iowa Mar.

---

[10] *See* Gyandoh Decl. ¶ 50 (citing 2020 Form 5500 filed with the U.S. Dept. of Labor).

25, 2020) ("ERISA actions have sufficient commonality when class members share questions of 'whether Defendants acted as fiduciaries, whether they breached their duties of prudence and loyalty, [and] whether they violated ERISA, as well as whether and to what extent the Plan was injured as a result.'") *Karg et al. v. Transamerica Corp.*, 2020 WL 3400199, at * 2 (N.D. Iowa Mar. 25, 2020); *Tracey v. Mass. Inst. Tech.*, 2018 WL 5114167, at * 4 (D. Mass. Oct. 19, 2018) ("ERISA breach of fiduciary duty actions relate to the duties owed to the Plan as a whole, commonality is quite likely to be satisfied.")

### 3.  Plaintiffs' Claims are Typical of the Class

Here, Plaintiffs easily satisfy the typicality prong of Rule 23 because "[a]s common investors in the Challenged Funds, plaintiffs and proposed class members allege similar harm resulting from defendants' alleged fiduciary breaches.  In fact, the harm may be identical." *Karg*, 2020 WL 3400199, at * 3;  *see also Stanford*, 263 F.R.D. at 167 (finding typicality requirement satisfied "because plaintiff challenges the same conduct that affects both the plaintiff and the absent class members"); *Sims v. BB&T Corp.*, 2017 WL 3730552, at*4 (M.D.N.C. Aug. 28, 2017) (finding typicality where "each named plaintiff's claim and each class member's claim is based on the same events and legal theory—a breach of fiduciary duty stemming from the defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the [p]lan's investments" and where "the

remedial theory . . . is identical for the named plaintiffs and the class members.")
(citations omitted).

### 4. Plaintiffs and Class Counsel Will Adequately Protect the Interest of the Class

Under Rule 23(a)(4), the representative parties must fairly and adequately
protect the interests of the class. FED. R. CIV. P. 23(a)(4). "The rule 'tests the
qualifications of class counsel and the class representatives. It also aims to root out
conflicts of interest within the class to ensure that all class members are fairly and
adequately represented in negotiations.'" *Fulton-Green v. Accolade, Inc.*, No. 18-
274, 2019 WL 4677954, *5 (E.D. Pa. Sept. 24, 2019) (quoting *In re: Nat'l Football
League Players Concussion Injury Litig,* 821 F.3d 410, 428 (3d Cir. 2016), *as
amended* (May 2, 2016)). This test "assures that the named plaintiffs' claims are not
antagonistic to the class and that the attorneys for the class representatives are
experienced and qualified to prosecute the claims on behalf of the entire class." *Beck
v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks
omitted). Here both prongs of the adequacy test are met.

### i. Plaintiffs Have No Conflicts With Other Members of the Class and Will Vigorously Prosecute This Action On Behalf of the Class

Here, all of the Plaintiffs understand the nature of their claims and duties as
class representatives to vigorously prosecute this case through its conclusion. *See*
Nesbeth Decl. ¶¶ 5-6; Godambe Decl. ¶¶ 5-6; Gallery Decl. ¶¶ 5-6; Howell Decl. ¶¶

5-6; Webb Decl. ¶¶ 5-6; *see also Stanford*, 263 F.R.D. at 171 ("Because Stanford is challenging the same course of conduct and seeking the same relief as the rest of the absent class members, the court finds that Stanford's interests are sufficiently aligned with the those of the class.")  As explained above in Section III.B.2, to date, Plaintiffs have met and exceeded that duty by, *inter alia*: (a) providing information to counsel prior to the initiation of the action and reviewing of the Complaint; (b) providing documents and assisting counsel in discovery matters; and (c) maintaining communication with counsel and monitoring the progress of the litigation.  *See* Nesbeth Decl. ¶¶ 5-6; Godambe Decl. ¶¶ 5-6; Gallery Decl. ¶¶ 5-6; Howell Decl. ¶¶ 5-6; Webb Decl. ¶¶ 5-6.  Moreover, had this litigation continued, Plaintiffs were committed to seeing this action through to the end and undertaking any responsibilities required of them as class representatives, including continuing to assist counsel in discovery matters, participating in any mediation or other proceedings, and testifying at depositions and at trial. *See* Nesbeth Decl. ¶¶ 5-6; Godambe Decl. ¶¶ 5-6; Gallery Decl. ¶¶ 5-6; Howell Decl. ¶¶ 5-6; Webb Decl. ¶¶ 5-6.  Accordingly, Plaintiffs are adequate representatives of the proposed Class.

> **ii. Plaintiffs' Counsel Have No Conflicts With the Class, Are Qualified and Experienced, and Will Vigorously Prosecute This Action for the Class**

The inquiry into the adequacy of class counsel is now decoupled from the Rule 23(a)(4) inquiry into the adequacy of the class representatives and is analyzed

under factors set forth in Rule 23(g).  *Karg*, 2020 WL 3400199, at *5 (citing FED. R. CIV. P. 23) ("If the motion includes a proposal for the appointment of class counsel, set forth with particularity the information the court must consider in assessing proposed class counsel's ability to represent the interests of the class fairly and adequately, as set forth in Federal Rules of Civil Procedure 23(g)(1)(A) and (B).") Rule 23(g) complements the requirement of Rule 23(a) that class representatives adequately represent the interests of class members by focusing on the qualifications of class counsel.  Rule 23(g)(1)(A) instructs the court to consider, among other things:  (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  FED. R. CIV. P. 23(g)(1)(A).  Rule 23(g) notes a court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  FED. R. CIV. P. 23(g)(1)(B).

Here, Capozzi Adler satisfies all prerequisites. *First*, Capozzi Adler has done significant work identifying and investigating potential claims in this action.   It began its investigation of claims several months before filing suit.  Gyandoh Decl., ¶¶ 3, 14-15.  This work included requesting documents from the Company pursuant to ERISA § 104(b)(4) and engaging consulting experts.  *Id*.  *Second,* Capozzi Adler

21

and the undersigned counsel have significant experience handling ERISA matters and have knowledge of the applicable law. *Id.* at ¶¶ 39-49. Capozzi Adler was recently appointed interim or co-lead counsel in several actions pending across the country and have defeated numerous motions to dismiss and settled analogous cases across the country. *Id.* at ¶ 44. Based on the foregoing, Capozzi Adler has the requisite qualifications to lead this litigation. *Third*, Capozzi Adler will commit the necessary resources to represent the class. With three office locations, the firm has been successfully serving clients for over 23 years offering a full range of legal services. *Id.*

Accordingly, appointment of Capozzi Adler as Class Counsel is warranted. *See Boley, et al. v. Universal Health Servs., Inc., et al.*, 2021 WL 859399 (E.D. Pa. Mar. 8, 2021) (appointing Capozzi Adler as co-lead counsel in analogous breach of fiduciary duty action); *Karg*, 2020 WL 3400199, at * 3 (appointing class counsel where "plaintiffs' counsel submitted documentation of their own qualifications and commitment.").

## B. The Class May Be Properly Certified Under Rule 23(b)(1) [11]

---

[11] Plaintiffs only address certification under Rule 23(b)(1) because certification is proper under that subpart of Rule 23, and Rule 23(b)(3) is intended to address "situations in which class action treatment is not as clearly called for as it is in Rule 23(b)(1)..." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Because the class may be certified under Rule 23(b)(1), however, the Court need not reach the propriety of certification under any other subpart of Rule 23.

The proposed Class may be certified under Rule 23(b)(1)(A) and/or (B), as numerous courts have done in similar cases. *See* Gyandoh Decl., Exhibit 7.[12]

### 1. Certification Under Rule 23(b)(1)(B) Is Most Appropriate

Many courts have relied upon Rule 23(b)(1)(B) in certifying classes in analogous cases because it is particularly suited for cases alleging the breach of fiduciary obligations to plaintiffs. Indeed, the Advisory Committee Notes to Rule 23 explicitly instruct that certification under Rule 23(b)(1)(B) is appropriate in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." FED. R. CIV. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment); *see also Schering-Plough*, 589 F.3d at 604 (finding certification of a Rule 23(b)(1)(B) class is appropriate where plaintiff's "proofs regarding defendants' conduct will, as a practical matter, significantly impact the claims of other Plan participants and of employees who invested in the Stock Fund. [Plaintiff's] claims are based on defendants' conduct, not, as defendants urge, on unique facts and

---

[12] Plaintiffs only address class certification under Rule 23(b)(1) because it is clear that certification is proper under Rule 23(b)(1), and Rule 23(b)(3) is intended to address "situations in which class action treatment is not as clearly called for as it is in Rule 23(b)(1) . . ." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). However, in the event that further analysis is required, the proposed class also satisfies the requirements of Rule 23(b)(3) because the common questions in this case "predominate" and class treatment is "superior". *See* FED. R. CIV. P. 23(b)(3).

individual relationships"); *Moore*, 268 F.R.D. at 538 (certifying 23(b)(1)(B) class); *Clark v. Duke Univ.*, 2018 WL 1801946, at *9 (M.D.N.C. April 13, 2018) (class certified under Rule 23(b)(1)(B) when plaintiffs "established that individual adjudications would be dispositive of the interests of the other participants not parties to the individual adjudications, because the claims concern the same actions in managing the Plan and because damages are owed to the Plan as a whole and not individual plaintiffs").

Here, the Complaint alleges breaches of fiduciary duties under ERISA. Therefore, the only remedy available to participants in the Plan is Plan-wide relief, including the restoration of losses. *See Mass. Mut. Life Ins. Co.*, 473 U.S. 134, 139-40 (1985). Thus, the proposed Class meets the requirements of FED. R. CIV. P. 23(b)(1), given the nature of this action and the relief sought on behalf of the Class. Accordingly, class certification should be granted under Rule 23(b)(1)(B), consistent with the Advisory Committee Notes to Rule 23 and the overwhelming weight of case law.[13]

### 2.  Certification is Also Appropriate Under Section 23(b)(1)(A)

If the Court determines that certification is appropriate under Rule 23(b)(1)(B), the inquiry need go no further. *See, e.g.*, *Koch v. Dwyer*, No. 98-CV-

---

[13] *See* Gyandoh Decl., Exhibit 7 (listing decisions certifying Rule 23(b)(1)(B) classes).

5519, 2001 WL 289972, at *5 n.2 (S.D.N.Y. Mar. 23, 2001) ("Since class certification is proper under Rule 23(b)(1)(B), it need not be determined whether Plaintiff has also satisfied the requirements of Rule 23(b)(1)(A) or 23(b)(2)."). Nevertheless, it is not uncommon for courts to certify ERISA class actions under both subsections 23(b)(1)(B) and 23(b)(1)(A). *See, e.g.*, *Stanford*, 263 F.R.D. at 173-174; *Merck*, 2009 WL 331426, at *10-11; *In re: Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827, at *16; *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 193-194 (W.D. Mo. 2009); *see also* Gyandoh Decl., Exhibit 7.

## VI.   CONCLUSION

Plaintiffs propose the Fairness Hearing be scheduled at least 120 days after entry of the Preliminary Approval Order in order to provide the Settlement Class with fair notice and the opportunity to be heard, as well as to provide notice to appropriate federal and state officials as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715. The submitted proposed preliminary approval order sets forth the proposed schedule of events which are subject to the Court's approval. For the reasons set forth above, the Settlement meets the standard for preliminary approval under Rule 23.

Dated:       January 28, 2022            Respectfully submitted,


**CAPOZZI ADLER, P.C.**

/s/ Mark K. Gyandoh
Mark K. Gyandoh, Esquire
Gabrielle Kelerchian, Esquire
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile:  (717) 233-4103
Email: markg@capozziadler.com
           gabriellek@capozziadler.com

**CAPOZZI ADLER, P.C.**
Donald R. Reavey, Esquire
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email: donr@capozziadler.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 28, 2022 a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: _Mark K. Gyandoh_____
        Mark K. Gyandoh, Esq.