# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS O. NESBETH, AMIT GODAMBE, JENNY GALLERY, MISTY HOWELL and MICAH WEBB, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | **CIVIL ACTION NO.: 2:21-cv-01444-PD** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ICON CLINICAL RESEARCH, LLC, THE BOARD OF DIRECTORS OF ICON CLINICAL RESEARCH, LLC, THE 401(K) PLAN COMMITTEE OF ICON CLINICAL RESEARCH, LLC and JOHN DOES 1-30. | ) ) ) ) ) ) | |
| Defendants. | | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS CARLOS O. NESBETH, AMIT GODAMBE, JENNY GALLERY, MISTY HOWELL, AND MICAH WEBB'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................1

II.    SUMMARY OF CLAIMS ..........................................................................2

III.   THE SETTLEMENT AGREEMENT ..........................................................3

VI.   THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED ........4

V.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE
SETTLEMENT............................................................................................7

     A.     Legal Standard..................................................................................7

     B.     The Third Circuit's *Girsh* Factors also are Satisfied ...........................8

           i.     The Complexity, Expense, and Likely Duration of the
Litigation......................................................................................8

           ii.    The Reaction of the Class to the Settlement..................................9

           iii.   The Stage of the Proceedings and the Amount of
Discovery Completed ...................................................................9

           iv.   The Risks of Establishing Liability and Damages ......................10

           v.    The Risks of Maintaining the Class Action through Trial ..........11

           vi.   The Ability of the Defendants to Withstand a Greater
Judgment.....................................................................................12

           vii.  The Range of Reasonableness of the Settlement Fund in
Light of the Best Possible Recovery and in Light of All
Attendant Risks of Litigation .....................................................13

           viii. The Requirements of FED R. CIV. P. 23(e)(2) Is Satisfied ..........15

                  (1) Effectiveness of Plan Distribution...........................................15

i

(2) Terms of Proposed Attorneys' Fees ........................................16

(3) Equitable Treatment of Class Members .................................16

VI.  THE PLAN OF ALLOCATION SHOULD BE FINALLY
APPROVED .........................................................................................17

VII.  FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS
WARRANTED ....................................................................................18

A.  The Proposed Class Meets the Requirements of Rule 23(b)(1) of
the Federal Rules of Civil Procedure....................................................18

B.  Adequacy of Named Plaintiffs and Class Counsel.............................19

VIII.  CONCLUSION ..........................................................................................21

## <u>ABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ............................................16

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .....................................................................................7

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) .....................................................................19

*Beesley v. Int'l Paper Co.*,
2014 WL 375432 (S.D. Ill. Jan. 31, 2014) .............................................16

*Brieger v. Tellabs, Inc.*,
659 F.Supp.2d 967 (N.D. Ill. 2009) .........................................................11

*In re: Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .....................................................................11

*Clark v. Duke Univ.*,
2018 WL 1801946 (M.D.N.C. April 13, 2018) .......................................18

*In re Computron Software, Inc.*,
6 F.Supp.2d 313 (D.N.J. 1998) ................................................................17

*Dewey v. Volkswagen Aktiengesellschaft*,
681 F.3d 170 (3d Cir. 2012) .....................................................................19

*In re: Flonase Antitrust Litig.*,
951 F.Supp.2d 739 (E.D.Pa. 2013) ("*Flonase*") .................................8, 10

*Fuller et al. v. SunTrust Banks, Inc. et al.*,
2018 U.S. Dist. LEXIS 113108 (N.D. Ga. June 27, 2018) ......................18

*Girsh v. Jepson*,
521 F.2d 153 (3d. Cir. 1975) ............................................................................ Passim

*Halley v. Honeywell Int'l, Inc.*,
861 F.3d 481 (3d Cir. 2017) ................................................................................. 8

*Hashw v. Dep't Stores National Bank*,
182 F.Supp.3d 935 (D. Minn. 2016) ...................................................................... 6

*Henderson, et al. v. Emory Univ.*, et al.,
No. 1:16-cv-02920 (N.D. Ga. Sept. 13, 2018) ...................................................... 18

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,
55 F.3d 768 (3d Cir. 1995) .............................................................................. Passim

*In re Ikon Office Solutions, Inc., Securities Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................ 17

*Krueger v. Ameriprise Financial*,
2015 WL 4246879 (D. Minn. July 13, 2015) ........................................................ 16

*Kruger v. Novant Health, Inc.*,
2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ...................................................... 16

*Lazy Oil Co. v. Witco Corp.*,
166 F.3d 581 (3d Cir. 1999) .................................................................................. 7

*In re: Linerboard Antitrust Litig.*,
321 F.Supp.2d 619 (E.D. Pa. 2004) ...................................................................... 13

*McDonald v. Edward Jones*,
791 Fed.Appx. 638 (8th Cir. 2020) ...................................................................... 16

*In re: Merck & Co., Inc. Securities, Derivative & ERISA Litig.*,
2009 WL 331426 (D.N.J. Feb. 10, 2009) .............................................................. 18

*Moore v. Comcast Corp.*,
268 F.R.D. 530 (E.D. Pa. 2010) ............................................................................ 18

iv

*In re: Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) .............................................................. Passim

*In re NJ Tax Sales Certificates Antitrust Litig.*,
750 Fed.Appx. 73 (3d Cir. 2018) ........................................................... 8

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ........................................................... 11, 14

*Reibstein v. Rite Aid Corp.*,
761 F.Supp.2d 241 (E.D. Pa. 2011) ...................................................... 13

*In re: Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................... 11

*Ripley v. Sunoco, Inc.*,
287 F.R.D. 300 (E.D. Pa. 2012) ........................................................... 19

*In re: Schering-Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ................................................................. 12

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
2012 WL 1964451 (D.N.J. May 31, 2012) ............................................ 18

*Spano v. The Boeing Co.*,
2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ........................................ 16

*Stevens v. SEI Investments Co.*,
2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ............................................ 8

*Stanford* v. *Foamex, L.P.*,
263 F.R.D. 156 (E.D. Pa. 2009) ........................................................... 18

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011) ................................................................. 13

*Walsh v. Great Atl. & Pac. Tea Co.*,
726 F.2d 956 (3d Cir. 1983) ................................................................... 7

*In re: Warfarin Sodium Antitrust Litig.,*
391 F.3d 516 (3d Cir. 2004) ......................................................................7, 8, 9, 12

**STATUTES**

FED. R. CIV. P. 23 ...............................................................................................19, 21

FED. R. CIV. P. 23(a)............................................................................................... 7

FED. R. CIV. P. 23(a)(4).......................................................................................... 21

FED. R. CIV. P. 23(b) ............................................................................................. 7

FED. R. CIV. P. 23(b)(1) ...................................................................................12, 18

FED. R. CIV. P. 23(e)............................................................................................ 21

FED. R. CIV. P. 23(e)(2) ..................................................................................8, 15, 17

FED. R. CIV. P. 23(e)(2)(C)(ii) ............................................................................... 16

FED. R. CIV. P. 23(e)(2)(c)(iv) ............................................................................... 15

FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) and (D)....................................................... 15

FED. R. CIV. P. 26(a)(1)........................................................................................ 10

FED. R. CIV. P. 23(g) ........................................................................................... 21

## I.    INTRODUCTION

On March 10, 2022, the Court preliminarily approved the Settlement in this Action (ECF No. 34), which provides for the creation of a $950,000.00 Settlement Fund.[1]  The Court's Preliminary Approval Order also, *inter alia*, conditionally certified a Settlement Class and appointed the Named Plaintiffs as class representatives and Capozzi Adler, P.C ("Capozzi Adler") as Class Counsel.  *Id.* Plaintiffs and Class Counsel believe each of these findings in the Preliminary Approval Order should be made final because the proposed Settlement represents an outstanding recovery.  In particular, the Settlement represents approximately 50% of the Settlement Class's estimated realistic damages as calculated by Plaintiffs. Gyandoh Decl., ¶ 45.  Class Counsel achieved this Settlement only after extended arms' length negotiations over several weeks by experienced counsel on both sides.

The Settlement Class has received full and fair notice of the terms of the Settlement through individualized direct mail and a dedicated internet Settlement website, in accordance with the Preliminary Approval Order.  After mailing the approved form of Notice of Class Action Settlement to Class Members, Class

---

[1] The Settlement Agreement, previously submitted to the Court, is being submitted herein as Exhibit 1 to the Declaration of Mark K. Gyandoh ("Gyandoh Decl.") which is filed contemporaneously with this memorandum.  The Settlement Agreement has several exhibits.  These exhibits are: A (Settlement Notice); B (Plan of Allocation); C (Preliminary Approval Order); D (Final Order); and E (CAFA Notice).  Undefined capitalized terms herein have the same meaning as in the Settlement Agreement.

Counsel have thus far received no objections.  Plaintiffs respectfully request this Court to enter the proposed Judgment Approving Class Action Settlement.

## II.   SUMMARY OF CLAIMS

Plaintiffs Carlos O. Nesbeth, Amit Godambe, Jenny Gallery, Misty Howell, and Micah Webb filed a Class Action Complaint ("Complaint") on March 26, 2021 (ECF No. 1) against Defendants.  Plaintiffs alleged, *inter alia*, that throughout the Class Period (defined in the Settlement Agreement as March 26, 2015 through March 10, 2022, the date of the Preliminary Approval Order), Defendants selected a slate of investment options for the Plan that were imprudent due to their high fees where identical funds – differing only in price – were available in the marketplace. Plaintiffs alleged had there been a prudent process in place, the majority of these funds would have been replaced with the identical less expensive alternatives as early as the beginning of the Class Period.  In addition to the aforementioned claims, Plaintiffs alleged the Plan suffered millions of dollars in damages due to unreasonably high recordkeeping fees.  Defendants strongly dispute Plaintiffs' allegations, maintain that the Plan has been prudently managed throughout the relevant period, and deny liability for the alleged ERISA violations.

Plaintiffs' claims fell under two main theories of liability.  The first theory is that during the Class Period, Defendants failed to, among other things, utilize the lower fee share classes that were identical in all ways except price to the funds

already in the Plan ¶¶ 88-100; and the second theory is that Defendants failed to monitor or control the Plan's recordkeeping expenses ¶¶ 64-80.  Again, Defendants strongly dispute Plaintiffs' allegations and deny liability for the alleged ERISA[2] violations.  Defendants maintain the Plan's fiduciaries selected and retained prudent, well-performing, and reasonably priced investment options, and the Plan's fiduciaries ensured participants paid only reasonable fees associated with their participation in the Plan throughout the putative class period.

## III.   THE SETTLEMENT AGREEMENT

Defendants and/or their insurer will pay $950,000.00 to the Plan to be allocated to participants pursuant to a Court-approved Plan of Allocation.[3]  *See* Gyandoh Decl., ¶ 30.  The Settlement Agreement also provides for the payment of attorneys' fees of no more than 33 1/3% of the Gross Settlement Amount, and Plaintiffs' Case Contribution Awards of no more than $10,000 per Plaintiff.  *See* Gyandoh Decl., ¶ 37.  The "Settlement Class" is defined as:

> all persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during

---

[2] Employee Retirement Income Security Act of 1974.

[3] The Plan of Allocation, attached to the Settlement Agreement as Exhibit B, is premised on calculating a Plan participant's pro rata distribution based upon the individual's balances in the Plan during the Class Period.  *See also* Gyandoh Decl., ¶¶ 45-48.

> the Class Period.  Excluded from the Settlement Class are
> Defendants and their Beneficiaries.

*See* Settlement Agreement at ¶ 1.44.  The "Class Period" refers to "the period from March 26, 2015, through the date of the Preliminary Approval Order."  *Id.* at ¶ 1.13.

Plaintiffs and Settlement Class members will provide a release and covenant-not-to-sue to Defendants and the other Released Parties covering the claims which were or could have been asserted in the Action based on the facts alleged in the Complaint filed in this case or Defendants' defenses to the Plaintiffs' claims.  *Id.* at §§ 1.37, 1.38, Article 7.  The release and covenant-not-to-sue in the Settlement does not encompass individual claims for vested benefits otherwise due under the terms of the Plan.

## IV.   THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED

Pursuant to the Preliminary Approval Order, Class Counsel has overseen the issuance of the Court-approved Class Notice.  Class Counsel retained JND Legal Administration LLC ("JND") to serve as settlement and notice administrator.  *See* Declaration of Ryan Bahry Regarding Settlement Administration (attached as Exhibit 2 to the Gyandoh Declaration).  On February 2, 2022 and March 28, 2022, Defendants provided JND with spreadsheets containing, among other information, the names, mailing addresses, contact information, Social Security numbers, and other identifying data for a total of 13,690 unique Settlement Class Members.  Bahry

Decl., ¶ 6.  JND updated the Settlement Class member address information using data from the National Change of Address ("NCOA") database. Bahry Decl., ¶ 7. As of May 12, 2022, JND tracked 821 Class Notices that were returned to JND as undeliverable.  Bahry Decl., ¶ 11.  Of these 821 undeliverable Class Notices, 305 were re-mailed to forwarding addresses provided by the USPS and JND conducted additional advanced address research through TransUnion and received updated address information for an additional 378 Class Members.  *Id.*  JND promptly re-mailed Class Notices to these 378 Class Members. *Id.*  Additionally, on April 11, 2022, JND sent the customized Court-approved e-mail notice ("E-mail Notice") via e-mail from an established case inbox (info@ICONERISASettlement.com) to 13,252 unique Settlement Class Members with a valid e-mail address (438 Settlement Class Members were excluded from the e-mail campaign as they did not have a valid e-mail address).  Bahry Decl., ¶ 8.

The notice program was extremely successful as 13,676 Class Members were e-mailed or mailed a Notice that was not returned as undeliverable, representing 99.9% of total Settlement Class Members.  Bahry Decl., ¶ 13.  The notice program apprised Settlement Class members of the terms of the Settlement, and of their right to object to any or all of the terms of the Settlement, Plan of Allocation, Case Contribution Awards, or to Class Counsel's motion for award of attorneys' fees and reimbursement of litigation expenses.  The Class Notice was also posted on a

dedicated website – www.ICONERISASettlement.com – through which the public, and the Plan's current and former participants could (1) view a summary description of the Action and the status of the Action, and (ii) access the Settlement Agreement and related Settlement documents. *See* Bahry Decl., ¶ 13; Gyandoh Declaration, ¶ 60. As of the May 12, 2022, the Settlement website has tracked 1,565 unique users who registered 2,759 page views. Bahry Decl., ¶ 14. JND also established a case-specific toll-free number for Settlement Class Members to call to obtain information regarding the Settlement. Bahry Decl., ¶ 15. As of May 12, 2022, the toll-free number has received 48 incoming calls. Bahry Decl., ¶ 16.

Where, as here, a notice program includes direct mail notice to absent class members and is supplemented by a settlement website and a toll-free telephone number, this constitutes the "best notice practicable." *Hashw v. Dep't Stores National Bank*, 182 F.Supp.3d 935, 946 (D. Minn. 2016) (citations omitted). Indeed, the Court previously found the combination of the direct-mail Class Notice and dedicated Settlement website and phone number was adequate to inform Settlement Class members of the terms of the proposed Settlement and how to lodge an objection, and obtain additional information. *See* Preliminary Approval Order.

## V.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A. Legal Standard

"[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re: Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("*Warfarin*").  Approval of a class action settlement is in the sound discretion of the court. *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999).  In order to grant final approval of a class action settlement, the Court must first determine whether a class can be certified under Rule 23(a) and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Second, the Court must assess "whether the settlement is fair, adequate, and reasonable." *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983). To make this determination, courts in this circuit employ the more rigorous nine factor test set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d. Cir. 1975), which requires analysis of the following:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risk of litigation.

*Girsh*, 521 F.2d at 157; *see also In re NJ Tax Sales Certificates Antitrust Litig.*, 750 Fed.Appx. 73, 77 (3d Cir. 2018); *In re: Flonase Antitrust Litig.*, 951 F.Supp.2d 739,

742 (E.D.Pa. 2013) ("*Flonase*"); *Stevens v. SEI Investments Co.*, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020).

Although the Court must scrutinize the Settlement Agreement for fairness, "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("*Warfarin*").    As set forth below, the Settlement is fair, reasonable and adequate and should be granted final approved.

### B. The Third Circuit's *Girsh* Factors also are Satisfied

Although satisfaction of the *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768 (3d Cir. 1995) ("*GMC*") test is sufficient for preliminary approval, the Settlement also meets the more exacting approval standard articulated by the Third Circuit in *Girsh* and in Rule 23(e)(2).  A court may approve a settlement even if it does not find all of these factors militate in favor of approval. *NJ Tax Sales*, 750 Fed. Appx. at 77, citing *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 489-90, 491 (3d Cir. 2017) (affirming settlement approval where some factors did not weigh in favor of settlement).

#### i.    The Complexity, Expense, and Likely Duration of the Litigation

"The first factor 'captures the probable costs, in both time and money, of continued litigation.'" *In re: Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016), *as amended* (May 2, 2016) ("*NFL*")

(quoting *Warfarin*, 391 F.3d at 535-36 (internal quotation omitted)).  Here, the probable costs of continued litigation with respect to both time and money are high. Considerable additional discovery, both paper and testimonial, would be required before the case would be trial ready, and there would be voluminous briefing ahead in the absence of the proposed Settlement.  The Settlement in this Action comes at an opportune time given, if the litigation continues, there would be substantial expense to the Parties associated with necessary factual and expert discovery and assorted motion practice.

### ii.    The Reaction of the Class to the Settlement

To date, no objections have been received to the Settlement.  Class Counsel will address any objections prior to the Fairness Hearing.

### iii.    The Stage of the Proceedings and the Amount of Discovery Completed

As with the second prong of the *GMC* test, pursuant to the third *Girsh* factor, the Court must consider the "degree of case development that Class Counsel have accomplished prior to Settlement," including the type and amount of discovery already undertaken. *GMC*, 55 F.3d at 813.  "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *NFL*, 821 F.3d at 438-39 (3d Cir. 2016), quoting *Warfarin*, 391 F.3d at 537 (internal quotation omitted).  The discovery efforts in this Action were substantial. See Gyandoh Decl., ¶¶ 26-35.  The Parties exchanged Rule 26(a)(1)

Disclosures and exchanged document requests and interrogatories resulting in Defendants producing nearly five-thousand pages of documents. Additionally, each of the Named Plaintiffs presented for a deposition. From independent research, discovery productions, and depositions, Plaintiffs' counsel, in consultation with Plaintiffs' consulting experts, were able to assess the strengths and weaknesses of Plaintiffs' claims, as well as calculate potential Class-wide damages. See Gyandoh Decl., ¶¶ 36-44. Accordingly, the totality of the Parties' discovery efforts favors approval of the Settlement.

### iv.   The Risks of Establishing Liability and Damages

The fourth and fifth *Girsh* factors, which require examination of the risks of establishing liability and damages respectively, are "closely related" and therefore are properly addressed together. *In re Flonase Antitrust Litig.*, 951 F.Supp.2d 739, 744 (E.D. Pa. 2013). "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them," *GMC*, 55 F.3d at 814, and these inquiries "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998);

10

*see also In re: Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001), quoting *GMC*, 55 F.3d at 816.

Regarding establishing liability Defendants have already moved for summary judgment, which establishes a risk that Defendants would prevail before trial. Also, in this complex ERISA Action, Plaintiffs would proffer their liability and damages experts, which would undoubtedly be countered by Defendants' proffered experts. Ultimately, a battle of experts presenting differing damages calculations would ensue and the factfinder "would therefore be faced with competing expert opinions representing very different damage estimates[,] . . . adding further uncertainty." *In re: Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003). Although a trial on the merits in any case always entails some risk, in the context of ERISA breach of fiduciary duty class actions, the risk is even more considerable. Indeed, the undersigned is particularly qualified to realistically evaluate the risks of continued litigation, as he tried an analogous case to an unfavorable verdict for plaintiffs in *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009).

### v.    The Risks of Maintaining the Class Action through Trial

The sixth *Girsch* factor requires the Court to examine the risks of maintaining the class-action through trial due to the fact "[t]he value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases

also pools litigation resources and may facilitate proof on the merits." *GMC*, 55 F.3d at 817. "Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action." *Id.*

The Third Circuit has referred to ERISA derivative actions brought on behalf of a plan and its participants, such as the instant Action, as "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *In re: Schering-Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("*Schering-Plough ERISA*"). However, the Court had yet to rule on class certification at the time the Parties agreed to the proposed Settlement, and Defendants had already asserted arguments in opposition to Plaintiffs' motion for class certification. This factor too militates in favor of settlement as the settlement eliminates the risks of not being able to establish and maintain the class through trial.

### vi.   The Ability of the Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor requires the Court to consider "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *Warfarin*, 391 F.3d at 537-38. The Third Circuit has noted, "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011).

This is because, "when there is no 'reason to believe that Defendants face any risk of financial instability[,] . . . this factor is largely irrelevant.'" *In re: Nat'l Football League Players Concussion Injury Litig.*, 307 F.R.D. 351, 394 (E.D. Pa. 2015) (quoting *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241, 254 (E.D. Pa. 2011)). Thus, "the settling defendant's ability to pay greater amounts [may be] outweighed by the risk that the plaintiffs would not be able to achieve any greater recovery at trial." *In re: Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004).

While ICON could likely withstand a judgment in an amount larger than the Settlement amount, the risks and expenses attendant to continuing this litigation, combined with the immediacy of the benefit to Settlement Class members, easily outweigh this factor.

### vii. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All Attendant Risks of Litigation

"According to *Girsh*, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and a range in light of all the attendant risks of litigation (the ninth [*Girsh*] factor)." *GMC*, 55 F.3d at 806.  To assess the reasonableness of a settlement in a case such as this, seeking primarily monetary relief, a court should compare "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with the amount of the

proposed settlement." *NFL,* 821 F.3d at 440, quoting *Prudential*, 148 F.3d at 322 (internal quotation omitted).  In determining the range of recovery in this Action, at one extreme is the possibility Defendants might prevail on one or more of their legal or factual arguments to defeat liability entirely.  While Plaintiffs are confident of the strength of the claims asserted, they recognize this possibility cannot be discounted completely.

If this case were to proceed to trial, Plaintiffs believe the realistic maximum damages are no more than $1.9 million before pre-judgment interest, which is based on Plaintiffs' overlapping allegations the Plan funds were invested in the wrong share class of several of the Plan's funds for much of the Class Period and the Plan fiduciaries overpaid for recordkeeping and administrative services using in part money collected from the excessive expense ratios of the Plan's funds.  Defendants have maintained these allegations are meritless.

Moreover, Plaintiffs' figures are dependent on the Court finding Defendants' fiduciary breaches to have occurred by the start of the Class Period on March 26, 2015.  But there is no guarantee this date would ultimately prevail or Plaintiffs otherwise would be successful in establishing liability.  The use of a later breach date and/or a determination the challenged decision-making processes was prudent could result in a recovery well below the $950,000.00 settlement amount or no recovery at all.  Given this wide range of potential damage outcomes at trial and the

uncertainty of the Plan's actual losses, the $950,000.00 monetary settlement is fair and reasonable.

### viii.    The Requirements of FED R. CIV. P. 23(e)(2) Is Satisfied

Under FED.R.CIV.P. 23(e)(2), the Court is to consider when determining whether to grant final approval the following factors: (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (2) "the terms of any proposed award of attorney's fees, including timing of payment"; and (3) whether "the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) and (D).[4]

### (1) Effectiveness of Plan Distribution

The proposed Plan of Allocation, described *infra* in Section VI, describes a plan of allocating the Net Settlement Amount to Class Members utilized in other analogous ERISA matters and is highly effective.  Current Plan participants – those who still maintain accounts in the Plan – will have payments made directly into their accounts.  Former participants – those who no longer maintain a Plan account – shall receive a check.

### (2) Terms of Proposed Attorneys' Fees

_____

[4] There are no agreements other than the Settlement Agreement, thus FED. R. CIV. P. 23(e)(2)(c)(iv) is irrelevant.

The Settlement does not excessively compensate Class Counsel. The Settlement is not contingent on Class Counsel receiving a specific amount of fees and any fees they receive will be determined by the Court. The amount of fees Class Counsel is requesting, a third of the monetary portion of the Settlement, is reasonable and consistent with the awards in other ERISA cases. This amount is in line with analogous awards in ERISA class action cases so the requirement of Rule 23(e)(2)(C)(ii) will likely be met.[5]

### (3) Equitable Treatment of Class Members

The Settlement does not unduly favor the Plaintiffs. Plaintiffs' shares of the Settlement will be based on the Plan of Allocation, a formula based on the losses to their Plan account. While Plaintiffs also intend to request Case Contribution Awards, the Settlement is not contingent on Plaintiffs receiving an award in a specified amount and the amount Plaintiffs intend to request is in line with the awards in other cases as explained in the Fee Motion. Further, the Plan of Allocation

---

[5] *See McDonald v. Edward Jones*, 791 Fed.Appx. 638, 640 (8th Cir. 2020) (affirming judgment awarding the class counsel attorneys' fees of 1/3 of the settlement fund); *see also Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016); *Spano v. The Boeing Co.,* 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015); *Krueger v. Ameriprise Financial*, 2015 WL 4246879, at *4 (D. Minn. July 13, 2015); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014); *see also* Plaintiffs' Motion For An Award of Attorney's Fees and Reimbursement of Expenses and Case Contribution Awards and supporting Memorandum of Law being filed contemporaneously herewith ("Fee Motion").

agreed to by the Parties clearly treats Class Members equitably relative to each other because each member is entitled to their *pro rata* share of losses and all Settlement Class members will receive at least $10.00.

Given the above, Rule 23(e)(2) is satisfied.

## VI.   THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED

"Approval of a plan of allocation of a settlement fund in a class action is 'governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'" *In re Ikon Office Solutions, Inc., Securities Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (quoting *In re Computron Software, Inc.*, 6 F.Supp.2d 313, 321 (D.N.J. 1998)). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Id.* The proposed Plan of Allocation here, attached to the Settlement Agreement as Exhibit B, is premised on calculating a Settlement Class member's distribution on a *pro rata* basis based on account balances, a proxy for the alleged losses. No payment to any Settlement Class member shall be smaller than ten dollars ($10.00). Any Settlement Class Member whose payment pursuant to Section D of the Plan of Allocation is less than ten dollars ($10.00) shall receive a distribution of ten dollars ($10.00). *See* Plan of Allocation at Section D. Further, current participants will receive their share of the Settlement Fund through a distribution to their Plan account. *Id*. at Section E.

## VII.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

### A. The Proposed Class Meets the Requirements of Rule 23(b)(1) of the Federal Rules of Civil Procedure

Before entering the Preliminary Approval Order, this Court examined the record and conditionally certified the Settlement Class pursuant to FED. R. CIV. P. 23(b)(1).  *See* Preliminary Approval Order.  Nothing has changed in the record to compel the Court to now reach a different conclusion with respect to the final approval of the Settlement Class.  Indeed, courts within the Third Circuit and across the country have determined breach of fiduciary duty claims under ERISA analogous to those at issue in this action are uniquely appropriate for class treatment.[6]  To avoid unnecessary repetition, Plaintiffs incorporate their arguments from their memorandum in support of preliminary approval (ECF 30-1; pp. 15-24) and request the Court make the same findings it did in preliminarily certifying a settlement class and certify the following Class for settlement purposes only:

---

[6] *See, e.g., Henderson, et al. v. Emory Univ.*, et al., No. 1:16-cv-02920 (N.D. Ga. Sept. 13, 2018) (certifying class under 23(b)(1)(A) and (B)); *Fuller et al. v. SunTrust Banks, Inc. et al.*, 2018 U.S. Dist. LEXIS 113108 (N.D. Ga. June 27, 2018) (same); *Clark v. Duke Univ.*, 2018 WL 1801946 (M.D.N.C. April 13, 2018) (same); *In re: Merck & Co., Inc. Securities, Derivative & ERISA Litig.*, MDL No. 1658, 2009 WL 331426, at *10-12 (D.N.J. Feb. 10, 2009); *Stanford* v. *Foamex, L.P.*, 263 F.R.D. 156, 175 (E.D. Pa. 2009); *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451 (D.N.J. May 31, 2012);  *Moore v. Comcast Corp.*, 268 F.R.D. 530, 538 (E.D. Pa. 2010).

all persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

## B. Adequacy of Named Plaintiffs and Class Counsel

Under Rule 23, certification of a class requires the Court determine both Named Plaintiffs and Class Counsel's adequacy. "The adequacy requirement encompasses two distinct inquiries designed to protect the interests of absentee class members: it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 309 (E.D. Pa. 2012); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012). This test "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted). Here both prongs of the adequacy test are met. In its Preliminary Approval Order, the Court found both Named Plaintiffs and Capozzi Adler to be adequate. *See* Preliminary Approval Order.

In connection with the instant motion for final approval, each of the Named Plaintiffs have submitted declarations and Class Counsel has also submitted a declaration to attest to their adequacy. Plaintiffs dedicated tens of hours to the prosecution of this action and have no interests antagonistic to the Class. *See* Declarations of Plaintiffs Nesbeth, Godambe, Gallery, Howell, and Webb (attached as Exhibits 9, 10, 11, 12, and 13, respectively, to the Gyandoh Declaration).

Plaintiffs also retained attorneys whom are highly qualified, experienced, and able to litigate this matter. Mark K. Gyandoh, Chair of the Fiduciary Practice Group at Capozzi Adler and his partner Donald R. Reavey, Esquire, are highly qualified ERISA class action attorneys. Mark K. Gyandoh, is currently serving as Lead or Co-Lead Counsel in numerous breach of fiduciary duty class actions in this District and across the nation. Gyandoh Decl., ¶ 8. Throughout the litigation Class Counsel has used its experience and access to resources to investigate and litigate Plaintiffs' underlying allegations, which ultimately led to the Settlement in this Action. Class Counsel have nearly two decades of experience in complex class actions and recommend this Settlement as the best solution for Settlement Class Members. The retention of highly qualified counsel, coupled with the alignment of interests between Named Plaintiffs and the Settlement Class Members, satisfies the requirements of Rules 23(a)(4) and 23(g).

## VIII. CONCLUSION

For the reasons set forth above, the Settlement meets the standard for final approval under Rule 23.  Accordingly, Plaintiffs seek an Order: (1) approving the Class Action Settlement Agreement under FED. R. CIV. P. 23(e); (2) certifying the above-defined Settlement Class; (3) appointing Named Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel under FED. R. CIV. P. 23(g); (4) finding the manner in which the Settlement Class was notified of the Settlement was the best practicable under the circumstances and fair and adequate; and (5) approving the Plan of Allocation.

Dated:         May 12, 2022              Respectfully submitted,


                                         **CAPOZZI ADLER, P.C.**

                                         */s/ Mark K. Gyandoh*
                                         Mark K. Gyandoh, Esquire
                                         Gabrielle Kelerchian, Esquire
                                         312 Old Lancaster Road
                                         Merion Station, PA 19066
                                         Telephone: (610) 890-0200
                                         Facsimile:  (717) 233-4103
                                         Email: markg@capozziadler.com
                                                gabriellek@capozziadler.com

                                         **CAPOZZI ADLER, P.C.**
                                         Donald R. Reavey, Esquire
                                         2933 North Front Street
                                         Harrisburg, PA 17110
                                         Telephone: (717) 233-4101
                                         Facsimile: (717) 233-4103
                                         Email: donr@capozziadler.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2022, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.


By: *<u>Mark K. Gyandoh</u>*
      Mark K. Gyandoh, Esq.