## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLOS O. NESBETH, AMIT GODAMBE, JENNY GALLERY, MISTY HOWELL and MICAH WEBB, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>ICON CLINICAL RESEARCH, LLC, THE BOARD OF DIRECTORS OF ICON CLINICAL RESEARCH, LLC, THE 401(K) PLAN COMMITTEE OF ICON CLINICAL RESEARCH, LLC and JOHN DOES 1-30.<br><br>            Defendants. | **CIVIL ACTION NO.:**<br>**2:21-cv-01444-PD** |

**DECLARATION OF MARK K. GYANDOH IN SUPPORT OF PLAINTIFFS CARLOS O. NESBETH, AMIT GODAMBE, JENNY GALLERY, MISTY HOWELL, AND MICAH WEBB'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND CASE CONTRIBUTION AWARDS FOR THE CLASS REPRESENTATIVES**

I, Mark K. Gyandoh, Esquire, as Class Counsel, declare as follows:

1.      I am a member in good standing of the bar of the Commonwealth of Pennsylvania and have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

1

2.      I am chair of the Fiduciary Practice Group at Capozzi Adler, P.C., and have been the lead attorney for my firm in this litigation representing Plaintiffs and the proposed Settlement Class in the above-captioned action.

### Counsel's Experience

3.      I received both my J.D. (2001) and LLM in trial advocacy (2011) from Temple University School of Law.  While at Temple, I was the research editor for the Temple International and Comparative Law Journal.  After law school I clerked for a year with a Judge on the New Jersey State Appellate Court.

4.      I have been litigating ERISA fiduciary breach lawsuits for 17 years, first at my prior firm of Kessler Topaz Meltzer & Check, LLP (KTMC), and currently at Capozzi Adler where, as noted above, I am chair of the Fiduciary Practice Group.  Over my career I have been actively involved in many high-profile ERISA class actions.  For example, I was one of the lead attorneys for plaintiffs in *Fifth Third Bancorp, et al., v. Dudenhoeffer, et al.*, 573 U.S. 409, 134 S. Ct. 2459 (2014), a seminal Supreme Court decision that clarified the unwavering duties owed by fiduciaries to pension plan participants.  *See* biography at https://capozziadler.com/mark-k-gyandoh-esquire/.

5.      My partner Donald Reavey who chairs the firm's Litigation Practice Group is an experienced litigator frequently handling multi-million dollar disputes. A 1998 graduate of Penn State, Dickinson School of Law, Mr. Reavey has leaned

on his two-decade plus litigation experience in filing and litigating dozens of ERISA breach of fiduciary duty actions over the last several years. *See* biography at https://capozziadler.com/donald-r-reavey-esquire/.

6.      Our team also includes Mid-Level Associate, Gabrielle P. Kelerchian, a 2017 graduate of Villanova Law School with several years of litigation experience. *See* biography at https://capozziadler.com/gabrielle-p-kelerchian-esquire/.  Before joining Capozzi Adler, Ms. Kelerchian zealously represented individuals in medical malpractice and personal injury cases at Philadelphia area law firms.

7.      Rounding out the ERISA team are our support staff which include paralegals and other paraprofessionals who assist in the practice.  Additionally, as litigation dictates, the ERISA team avails itself of the services of the other attorneys and staff at the firm.  Capozzi Adler has three office locations.  We have been serving clients for over 24 years offering a full range of legal services.

8.      I and my firm have been lead or co-lead interim counsel in dozens of ERISA breach of fiduciary duty actions.  Recently, Capozzi Alder was appointed interim co-lead class counsel in *Tracy et al. v. The American National Red Cross*, No. 1:21-cv-00541-EGS (D.D.C. Apr. 16, 2021) an ERISA class action analogous to the instant Action.  Capozzi Adler was also appointed co-lead class counsel in *Boley, et al. v. Universal Health Services, Inc., et al.* 2021 WL 859399 (E.D.Pa. Mar. 8, 2021).  Additionally, Capozzi has been appointed interim lead or co-lead class

counsel in several analogous ERISA breach of fiduciary duty matters. *See, e.g.,* *Bilello, et al., v. Estee Lauder, Inc., et al.*, No. 1:20-cv-04770-JMF (S.D.N.Y. Aug. 10, 2020) (Doc. 11.) (appointing Capozzi Adler interim lead class counsel); *Covington et al. v. Biogen Inc. et al.*, No. 1:20-cv-11325 (D. Mass. Oct. 6, 2020) (Doc. 24) (appointing Capozzi Adler interim Co-Lead Class Counsel); *Tepper et al. v. Omnicom Group et al.*, No. 20-cv-4141 (S.D.N.Y. Sept. 17, 2020) (Doc. 13) (same); *Johnson et al. v. Quest Diagnostics et al.*, No. 2:20cv07936 (D.N.J. Oct. 2, 2020) (Doc. 7) (same).

9.     Of particular importance here, while I was counsel at KTMC and in my current position, in the course of prosecuting ERISA class actions such as this, I have supervised the preparation of numerous consolidated pleadings, responses to motions to dismiss, drafting of discovery requests and review of hundreds of thousands of pages of plan-related documents and related documentation, and litigated cases through the summary judgment and trial phases.

10.     The firm strives to obtain the best results for class members in every circumstance.  We have successfully defeated motions to dismiss similar allegations in numerous actions.  *See, e.g., Kendall et al v. Pharmaceutical Product Development, LLC*, No. 7:20-cv-00071-D (ECF No. 28) (E.D.N.C. March 31, 2021) (upholding allegations that plan fiduciaries selected higher-priced identical share classes and overpaid for recordkeeping); *Davis v. Magna Int'l of America, Inc.*, 2021

WL 1212579 (E.D. Mich. March 31, 2021) (same); *Jones v. Coca-Cola Consolidated, Inc.*, No. 3:20-cv-00654-FDW-DSC (ECF No. 25) (W.D.N.C. March 31, 2021) (same); *McCool v. AHS Management Company, Inc.*, 2021 WL 826756 (M.D. Tenn. March 4, 2021) (same); *Parmer, et al. v. Land O'Lakes, Inc., et al.*, 2021 WL 464382 (D. Minn. Feb 9, 2021) (same); *In re Medstar ERISA Litig.*, 2021 WL 391701 (D. Md. Feb. 4, 2021) (same); *Silva v. Evonik Corp.* slip op. (D.N.J. Dec. 30, 2020) (same); *Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 2020 WL 1531870 (E.D.Pa. Mar. 31, 2020).

11.     We have also been successful at the appellate level resulting in the reversal and remand of wrongly dismissed actions.  *See, e.g., Kong et al. v. Trader Joe's Co.,* No. 20-56415 (9th Cir. Apr. 15, 2022) (reversing district court dismissal of ERISA excessive fee action); *Davis et al. v. Salesforce.com. Inc. et al.*, No. 21-15867 (9th Cur. Apr. 8, 2022) (same).  Conversely, we have successfully obtained affirmance of correctly decided cases.  *See, e.g., Hawkins et al. v. Cintas Corp.*, No. 21-3156 (6th Cir. Apr. 27, 2022) (upholding denial of motion to compel arbitration in ERISA case).

12.     My firm has also engaged in successful settlement negotiations and mediations in ERISA actions, recovering millions of dollars for its clients and class members.  *See, e.g., Buescher, et al., v. Brenntag North America, Inc., et al.*, No. 5:20-cv-00147 (E.D. Pa. 2020) (recovered $2,300,000.00 class settlement); *Pinnell,*

*et al., v. Teva Pharmaceuticals USA, Inc., et al.*, No. 2:19-cv-05738-MAK (E.D. Pa. 2019) (settlement in the amount of $2,550,000.00 after successful mediation); *Freck v. Cerner Corp., et al.*, No. 4:20-CV-00043-BCW (W.D. Mo. 2020) (recovered $4,050,000.00 class settlement); *Gerken, et al. v. ManTech Int'l Corp, et al.*, No. 1:20-cv-01536 (E.D. Va. 2020) (recovered $1,200,000.00 class settlement).

13.     Capozzi Adler also has the resources and commitment to deploy those resources on behalf of the proposed class in this case and has in fact done so as evidenced by our litigation efforts to date, including conducting discovery.

14.     Given my years of experience in this field of law, including, trying an analogous case to an unfavorable verdict for plaintiffs in *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009), I believe the settlement achieved in this case is adequate and certainly reasonable and fair.

### *Procedural History*

15.     Following several months of investigation, including engaging consulting experts, Plaintiffs Carlos O. Nesbeth, Amit Godambe, Jenny Gallery, Misty Howell, and Micah Webb filed a Class Action Complaint ("Complaint") on March 26, 2021 (ECF No. 1) against Defendants.  Plaintiffs alleged, *inter alia*, that throughout the putative Class Period (March 26, 2015 through the date of judgment), Defendants selected a slate of investment options for the Plan that were imprudent due to their high fees where identical funds – differing only in price – were available

in the marketplace.  Plaintiffs alleged had there been a prudent process in place, the majority of these funds would have been replaced with the identical less expensive alternatives as early as the beginning of the Class Period.

16.   In addition to the aforementioned claims, Plaintiffs alleged the Plan suffered millions of dollars in damages due to unreasonably high recordkeeping fees.

17.   Plaintiffs' claims fell under two main theories of liability.  The first theory is that during the Class Period, Defendants failed to, among other things, utilize the lower fee share classes that were identical in all ways except price to the funds already in the Plan (¶¶ 88-100); and the second theory is that Defendants failed to monitor or control the Plan's recordkeeping expenses (¶¶ 64-80).

18.   On June 1, 2021, Defendants filed their Answer and Defenses to Plaintiffs' Complaint (ECF No. 10).

19.   On September 27, 2021, Plaintiffs filed their Motion for Class Certification (ECF Nos. 21 through 21-9).

20.   On November 15, 2021, Defendants filed their Memorandum of Law In Opposition to Plaintiffs' Motion for Class Certification (ECF Nos. 22 through 22-14).

21.   On November 19, 2021, Defendants' filed their Motion for Summary Judgment (ECF No. 23 through 23-4).

22.     On December 10, 2021, Plaintiffs filed their FED. R. CIV. P. Rule 56(d) Response to Defendants' Motion for Summary Judgment (ECF Nos. 26 through 26-8).

23.     On December 15, 2021, Plaintiffs filed a Reply in Support of their Motion for Class Certification (ECF No. 27).

24.     On December 23, 2021, the Parties filed a Notice of Settlement (ECF No. 28).

25.     On January 28, 2022, the Parties filed their motion for preliminary approval of the Settlement.

### *Discovery Practice*

26.     On September 28, 2020, prior to filing suit, Plaintiffs requested numerous documents and information from Defendants pursuant to Section 104(b)(4) of ERISA.

27.     In response to Plaintiffs' request, on October 28, 2020, Defendants produced numerous responsive documents.

28.     On June 25, 2021, Plaintiffs served Plaintiffs' First Request for Production of Documents Directed to All Defendants to Defendants. Defendants served responses to Plaintiffs on July 30, 2021.

29.     On August 10, 2021, Plaintiffs served Plaintiffs' First Set of Interrogatories Directed to Defendants to Defendants.  Defendants served responses to Plaintiffs on September 30, 2021.

30.     On June 25, 2021, Defendants served Defendants' First Set of Interrogatories to All Named Plaintiffs and Defendants First Set of Requests for Production of Documents to Plaintiffs.  Plaintiffs served responses to Defendants on August 13, 2021.

31.     On October 25, 2021, Plaintiff Micah Webb presented for a deposition.

32.     On October 26, 2021, Plaintiff Jenny Gallery presented for a deposition.

33.     On October 27, 2021, Plaintiff Carlos Nesbeth presented for a deposition.

34.     On November 4, 2021, Plaintiff Misty Howell presented for a deposition.

35.     On November 5, 2021, Plaintiff Amit Godambe presented for a deposition.

### *Settlement Negotiations*

36.     Throughout the summer and fall months of 2021, counsel for both Parties exchanged numerous e-mails, phone calls, and letters in an effort to facilitate settlement negotiations.

37.     On December 6, 2021, Plaintiffs sent Defendants a confidential settlement demand.

38.     On December 13, 2021, Defendants responded to Plaintiffs' December 6, 2021 confidential settlement demand.

39.     On December 17, 2021, Plaintiffs responded to Defendants' December 13, 2021 correspondence with further information related to their confidential settlement demand.

40.     On December 19, 2021, Defendants' responded to Plaintiffs' December 17, 2021 letter.

41.     Throughout the month of December 2021, counsel for both Parties exchanged numerous emails and phone calls in an effort to reach an agreed upon settlement.

42.     On December 23, 2021, the Parties agreed to a settlement in principle, settling this matter for $950,000.00.  Several weeks of negotiations followed to finalize the terms of the Settlement Agreement, which was executed on January 28, 2022.  The Settlement Agreement is attached hereto as Exhibit 1.  Based on the aforementioned negotiations and exchange of information, the Parties were able to negotiate a fair settlement that they believe to be in their respective best interests.

43.     After reviewing all of the relevant information, Plaintiffs determined maximum potential damages to the Plan to be under $2 million before calculation of prejudgment interest.

44.     It is Plaintiffs' counsel's opinion that the proposed settlement is fair and reasonable.

### *The Settlement Terms*

45.     The Settlement provides ICON (or its insurers) will pay $950,000.00 – the Gross Settlement Amount – to be allocated to participants on a pro-rata basis pursuant to the proposed Plan of Allocation (*see* Exhibit B to Settlement Agreement) in exchange for releases and dismissal of this action (described in Article 7 of the Settlement Agreement).

46.     The Gross Settlement Fund will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, and Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Compensation if awarded by the Court.

47.     The Class Members include all individuals in the Settlement Class, or:

> all persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period.  Excluded from the Settlement Class are Defendants and their Beneficiaries.

*See* Settlement Agreement, Section 1.44.  Class Period means the period from March 26, 2015 through the date of the Preliminary Approval Order.  *Id.*, Section 1.13.

48.    A portion of the funds from the Net Settlement Amount will be allocated to each Class Member in proportion to the sum of that Class Member's Balance as compared to the sum of the Balance for all Class Members.  *See* Plan of Allocation at II.C.  Class Members who are entitled to a distribution of less than the minimum amount of $10.00 will receive $10.00, the De Minimis amount, from the Net Settlement Amount. *Id.* at II.D.  For Class Members with an Active Account (an account with a positive balance) as of March 31, 2022, each Class Member's Final Entitlement Amount will be allocated into their Plan account.  *Id.* at II.E.  Former Participants shall be paid directly by the Settlement Administrator by check.  *Id.* at II.F.

49.    Class Counsel intends to seek to recover their attorneys' fees not to exceed $316,635.00.  *See* Settlement Agreement, Section 1.4.  Class Counsel also intends to seek to recover litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, not to exceed $50,000.00.  *Id.* Additionally, Class Counsel intends to seek Class Representatives' Case Contribution Awards in an amount not to exceed $10,000 each for Class Representatives Carlos O. Nesbeth, Amit Godambe, Jenny Gallery, Misty Howell, and Micah Webb.  *Id.*, Section 1.9.

### *Effectuation of Notice*

50.     Pursuant to the Preliminary Approval Order, Class Counsel has overseen the issuance of the Court-approved Class Notice.  Class Counsel retained JND Legal Administration LLC ("JND") to serve as settlement and notice administrator.  *See* Declaration of Ryan Bahry Regarding Settlement Administration attached hereto as Exhibit 2.

51.     On February 2, 2022 and March 28, 2022, Defendants provided JND with spreadsheets containing, among other information, the names, mailing addresses, contact information, Social Security numbers, and other identifying data for a total of 13,690 unique Settlement Class Members.  Bahry Decl., ¶ 6.

52.     JND updated the Settlement Class member address information using data from the National Change of Address ("NCOA") database. Bahry Decl., ¶ 7.

53.     JND performed advanced address research through TransUnion to identify current addresses prior to mailing.  Bahry Decl., ¶ 11.

54.     As of May 12, 2022, JND tracked 821 Class Notices that were returned to JND as undeliverable.  *Id.*

55.     Of these 821 undeliverable Class Notices, 305 were re-mailed to forwarding addresses provided by the USPS and JND conducted additional advanced address research through TransUnion and received updated address information for an additional 378 Class Members.  *Id.*

56.     JND promptly re-mailed Class Notices to these 378 Class Members. *Id.*

57.     On April 11, 2022, JND sent the customized Court-approved e-mail notice ("E-mail Notice") via e-mail from an established case inbox (info@ICONERISASettlement.com) to 13,252 unique Settlement Class Members with a valid e-mail address (438 Settlement Class Members were excluded from the e-mail campaign as they did not have a valid e-mail address).  Bahry Decl., ¶ 8.

58.     The notice program was extremely successful as 13,676 Class Members were e-mailed or mailed a Notice that was not returned as undeliverable, representing 99.9% of total Settlement Class Members.  Bahry Decl., ¶ 12.

59.     The notice program apprised Settlement Class members of the terms of the Settlement, and of their right to object to any or all of the terms of the Settlement, Plan of Allocation, Case Contribution Awards, or to Class Counsel's motion for award of attorneys' fees and reimbursement of litigation expenses.

60.     The Class Notice was also posted on a dedicated website – www.ICONERISASettlement.com – through which the public, and the Plan's current and former participants could (1) view a summary description of the Action and the status of the Action, and (ii) access the Settlement Agreement and related Settlement documents.  *See* Bahry Decl., ¶ 13.

61.     As of the March 12, 2021, the Settlement website has tracked 1,565 unique users who registered 2,759 page views.  Bahry Decl., ¶ 13.

62.     JND also established a case-specific toll-free number for Settlement Class Members to call to obtain information regarding the Settlement.   Bahry Decl., ¶ 15.

63.     As of May 12, 2022, the toll-free number has received 48 incoming calls.  Bahry Decl., ¶ 16.

### Class Counsel's Requested Fee and Expense Awards is Fair and Reasonable

64.     As detailed in the accompanying Fee Memorandum, Class Counsel believes that Class Counsel's request for attorneys' fees readily meets the standards set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d. Cir. 1975) and merits the Court's approval.

65.     This was a vigorously prosecuted case which involved considerable time and resources investigating the action, successfully opposing the motion to dismiss, responding to Defendants' motion for summary judgment, briefing Plaintiffs' motion for class certification, and negotiating an excellent result for the Settlement Class.

66.     The recovery of $950,000.00 in this case was achieved through the skill, work, dedication, and effective advocacy of Class Counsel who leaned on his decades of experience with complex ERISA class action litigation of this type.

67.    As payment for services rendered in achieving such a result, Class Counsel seek an award of attorneys' fees in the amount of $316,635.00 plus reimbursement of expenses reasonably incurred by Class Counsel.  Class Counsel's efforts since the inception of this case has been without compensation of any kind and their fee has been wholly contingent upon the result achieved.

68.    In this action, attorneys' fees equaling one third of the Settlement Fund result in a fair and reasonable fee, especially given that the monetary result provides a benefit to the Settlement Class, and society has as interest that the wrongdoing alleged is prevented in the future.

69.    As lead Plaintiffs' attorney, I personally managed, delegated, and supervised the allocation of personnel and expenses employed by my firm in this case.  We have aggressively, efficiently, and vigorously prosecuted this case and represented the best interest of the Plaintiffs and the participants and beneficiaries of the Plan.  Over the course of the litigation, we have incurred the following expenses:

| Expense Category | Amount |
|---|---|
| Court Costs (Filing fees) | $ 200.60 |
| PACER | $ 166.80 |
| Westlaw/Research | $ 1,231.09 |
| Courier/Fed Ex | $ 110.40 |
| Deposition Transcripts | $ 6,400.05 |
| E-Discovery Document Hosting Charges | $ 6,711.66 |
| Travel (including for Final Fairness Hearing) | $ 62.00 |

| Total | $ 14,882.60 |
|---|---|

70.   The expenses listed above were actually incurred in the litigation of this case as reflected in the books and records of Capozzi Adler.   These books and records are prepared from receipts, expense vouchers, check records, and other documents and are an accurate record of the expenses.   These expenses were necessary to the prosecution and settlement of the case, and are of the type that would be billed to hourly clients of the firm.

71.   The firm's hours and lodestar devoted to this matter, as of May 12, 2022, are as follows:

| Name | Position | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Mark K. Gyandoh | Partner | $885 | 80.7 | $71,419.50 |
| Donald R. Reavey | Partner | $885 | 129.3 | $114,430.50 |
| Gabrielle P. Kelerchian | Mid-Level Associate | $550 | 109.2 | $60,060 |
| Linda Gussler | Snr. Paralegal | $350 | 30.0 | $10,500 |
| Lauren Phillips | Paralegal | $335 | 44.9 | $15,041.50 |
| Christeena Joy | Professional Staff | $250 | 9.0 | $2,250.00 |
| Kendall Adams | Professional Staff | $250 | 5.9 | $1,475.00 |
| Hugh Murchie | Summer Legal Intern | $250 | 13.0 | $4,725.00 |
| **Totals** | | | 422 | $ 279,901.50 |

72.     Counsel's request for fees of $316,635.00 results in a multiplier of 1.13 based on the number of hours expended on this case at counsel's customary billing rates.

73.     The time reflected above was reasonable and necessary to effectively prosecute this case, and avoided duplication of efforts.  Moreover, we have reviewed our time records and eliminated certain entries in the exercise of billing judgment.

74.     The above table is based on my firm's contemporaneous time records, and breaks out the hours and rates for each attorney, paralegal and professional staff.

75.     Details and material supporting the time records and expenses referenced in this declaration are available upon the request of the Court.

76.     I reviewed the time printouts to confirm both the accuracy of the entries on the printouts as well as the necessity for and reasonableness of the time commitment to the litigation.  Based on this review, I believe the time reflected in my firm's lodestar calculation is reasonable in amount and was necessary for the effective and efficient prosecution and resolution of the litigation.  Capozzi Adler litigated this case on a wholly contingent basis and the hourly rates shown for the attorneys and paraprofessionals at my firm are the current hourly rates for contingent matters.  These rates are in line with those charged by other firms in the field of nationwide ERISA class action work and have been approved by courts in numerous

cases. Moreover, the rates are reasonable in comparison to the firms that defend nationwide ERISA class action cases.

77.    The time entries above do not include future time that will be spent on this case to communicate with class members and monitor Defendants' compliance with the Settlement, among other things.  It also does not include time that will be spent on preparation for and interviews with the Independent Fiduciary with respect to its review of the Settlement, or preparation for and attendance at the Fairness Hearing.

78.    Without the Action, it is highly unlikely that individual claimants would have had the resources to pursue claims of this magnitude.  Protecting the retirement funds of employees, and obtaining recompense when those funds are mismanaged, is in the public interest and supports the fee award sought.

79.    As discussed in the accompanying Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Settlement Agreement and Fee memorandum, as a result of diligent efforts and their skill and expertise, Class Counsel were able to negotiate an excellent Settlement for the Settlement Class.

### *Capozzi Adler's Hourly Rates Compare Favorably to Their Peers*

80.    For its contingency practice, Capozzi Adler charges partner rates of $885 per hour; mid-level associate rates of $550 per hour; and paralegal and professional staff rates that range from $335 to $350 per hour.  More junior support

staff are billed at $250 per hour.  These hourly rates are commensurate with the firm's degree of skill, experience, and reputation.  Each member of Capozzi Adler's Fiduciary Practice Group has the requisite experience, as described above, to command their hourly rates.

81.    In the course of my 17-year nationwide ERISA practice, I have worked with most if not all firms that have a national ERISA class action practice.  In my experience, while there are invariably differences in rates between different firms – and even between rates for lawyers within the same firm with the same number of years of practice – Capozzi Adler's rates are broadly in line with rates of other firms with nationwide class action practices, that have been the basis for awards of fees in courts around the country.

82.    Four of these firms that I have worked for, or with, in the past recently filed declarations in support of a fee petition in *Beach, et al. v. JPMorgan Chase Bank, N.A. et al.*, No. 1:17-cv-00563 (S.D.N.Y.).  Like this Action, *Beach* involved allegations that JPMorgan Chase breached its fiduciary duties under ERISA to participants in the JPMorgan Chase retirement plan.  *Id.*  Plaintiffs' counsel's declarations demonstrate attorneys and staff in their offices charge similar rates as Capozzi Adler.

83.    My former firm KTMC, a Pennsylvania based firm like Capozzi Adler, charges partner rates that range from $700 to $920; associate rates that range from

$400 to $505; paralegal rates that range from $250 to $275; and professional staff rates of $250. *See* Exhibit 3 (Excerpts of KTMC declaration).

84.    Nichols Kaster, PLLP, a Minnesota-based firm with a national ERISA practice, charges partner rates that range from $775 to $875; associate rates that range from $425 to $575; paralegal and professional staff rates of $250. *See* Exhibit 4 (Excerpts of Nichols Kaster declaration).

85.    Keller Rohrback L.L.P., a Washington State-based firm with a national ERISA practice, charges partner rates that range from $765 to $1,035; associate rates that range from $400 to $650; and professional staff rates that range from $225 to $325. *See* Exhibit 5 (Excerpts of Keller Rohrback declaration)

86.    Robbins Geller Rudman & Dowd LLP, with an office in the state of New York and a national ERISA practice, charges partner rates that range from $760 to $1,325; associate rates that range from $460 to $575; paralegal rates that range from $275 to $350; and professional staff rates that range from $290 to $295. *See* Exhibit 6 (Excerpts of Robbins Geller declaration).

87.    Additionally, Capozzi Adler's rates generally compare favorably to the large, sophisticated firms that typically represent defendants in ERISA class actions.

88.    Morgan Lewis, who represented the Defendants in this matter stated in a court filing dated August 14, 2020, that the "range of hourly rates currently charged by Morgan Lewis attorneys and paraprofessionals who are currently or could be

staffed on these cases, subject to modification depending upon further development, are as follows:" partner rates range from $1,025 to $1,250; associate rates range from $500 to $675; and professional staff rates range from $280 to $360. *See* Exhibit 7 (Excerpts of Morgan Lewis filing in *In re COVIA Holdings Corp.*, *et al.*, No. 20-33295 BK. Ct. S.D. Tex.).

89.     Further, the Valeo Report, a report that collected and summarized hourly rates across various firms, shows that among ERISA practice groups within the top 200 law firms in the defense bar, the 2017 hourly rate range for senior partners was $320-$1,363 (with an average of $835), for partners was $296-$1,202 (with an average of $751), and for senior associates was $238-$938 (with an average of $580). *See* Exhibit 8 (Excerpts of Valeo Report).

90.     Finally, Capozzi Adler's rates have been approved by numerous courts. *See, e.g., Diaz v. BTG Int'l, Inc.*, No. 19-cv-1664-JMY, 2021 WL 2414580 (E.D. Pa. June 14, 2021); *Pinnell v. Teva Pharmaceuticals USA, Inc.*, No. 2:19-cv-05738-MAK (ECF No. 93) (June 11, 2021); *Buescher v. Brenntag North America, Inc.*, No. 5:20-cv-00147-JMG (ECF No. 38-2) (E.D. Pa. July 9, 2021).

### *Case Contribution Awards Sought for the Plaintiffs Are Reasonable*

91.     Plaintiffs seek an award of $10,000 for each of the three Class Representatives for their contributions to the prosecution and Settlement of the Action. Any such awards will be paid from the Settlement Fund.

92.     Each of the Plaintiffs was instrumental in seeking relief on behalf of the Plan and they each have been actively involved in the litigation.  These individuals took time away from other obligations in order to fulfill their obligations to the Settlement Class by: (1) engaging counsel, reviewing the Complaint and agreeing to publicly serve as Named Plaintiffs; (2) staying informed of the case and making themselves available at all times to discuss the litigation; (3) providing information and documents; (4) participating in teleconferences concerning the Action; (5) preparing and presenting for a deposition; and (6) reviewing, considering, and ultimately approving the proposed Settlement for presentation to the Court.

93.     Attached hereto as Exhibit 9 is Plaintiff Carlos O. Nesbeth's declaration in support of his application for a case contribution award.  Plaintiff Amit Godambe's declaration is attached as Exhibit 10.  Plaintiff Jenny Gallery's declaration is attached as Exhibit 11.  Plaintiff Misty Howell's declaration is attached as Exhibit 12.  Plaintiff Micah Webb's declaration is attached as Exhibit 13.

94.     As discussed in the accompanying Fee Memorandum, the requested case contribution awards are supported by ample legal authority in similar cases.

95.     Further, to date, no objection to the Case Contribution Awards request has been raised.  We will advise the Court if any objection is received subsequent to the date of the objection deadline.

I declare, pursuant to 28 U.S.C. §1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 12th day of May, 2022, in Merion Station, Pennsylvania.

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire

***Proposed Class Counsel***