**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARLOS NESBETH**, *et al.*, individually and on behalf of all others similarly situated, | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **Civ. No. 21-1444** |
| | : | |
| **ICON CLINICAL RESEARCH LLC**, *et al.*, | : | |
| **Defendants.** | : | |

## O R D E R

On March 26, 2021, Plaintiffs Carlos O. Nesbeth, Amit Godambe, Jenny Gallery, Misty Howell, and Micah Webb brought this ERISA class action against Defendants ICON Clinical Research, LLC; the Board of Directors of ICON Clinical Research, LLC; members of the Board of Directors (referred to as John Does 1-10 in the Complaint); the 401(k) Plan Committee of ICON Clinical Research, LLC; members of the 401(k) Plan Committee (referred to as John Does 11-20 in the Complaint); and "additional officers, employees and/or contractors of ICON who are/were fiduciaries of the Plan during the Class Period, or were hired as an investment manager for the Plan during the Class Period" whose identities are unknown (referred to as John Does 21-30 in the Complaint). Plaintiffs alleged that Defendants had breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 by failing to manage the ICON Clinical Research, LLC 401(k) Plan prudently. (Compl., Doc. No. 1.) On March 10, 2022, I conditionally certified a Settlement Class and preliminarily approved the Parties' Settlement Agreement. (Doc. No. 34.) Plaintiffs now ask me finally to certify the Settlement Class, grant final approval of the Settlement Agreement, and approve attorneys' fees and incentive awards. (Doc. Nos. 35–38.) Because I conclude that: (1) the Settlement Class meets the requirements of Rule 23(a) and 23(b)(1); (2) Notice was sufficient; (3) the terms of the Settlement are fair, reasonable, and

adequate; and (4) the requested costs, fees, and awards are reasonable, I will grant Plaintiffs'
Motions.

## I.      BACKGROUND

ICON's 401(k) Plan is an ERISA-qualified defined contribution plan.  (Compl. ¶ 44; Ans.
¶ 44, Doc. No. 10); 29 U.S.C. § 1002(34).  The 401(k) Plan Committee is "responsible for oversight
of the Plan, determines the appropriateness of the Plan's investment offerings, and monitors
investment performance."  (Compl. ¶ 32 (internal quotations omitted).)  Plaintiffs allege that all
Defendants are fiduciaries of the Plan.  (Id. at ¶ 56.)

Regular, full-time ICON employees are eligible to participate in the Plan.  (Id. at ¶ 45.)
ICON employees may contribute up to 75% "of eligible compensation . . . up to the annual limit
established" by the IRS.  (Id. at ¶ 47 (internal quotations omitted).)   ICON matches some
contributions.  (Id.)  Plan participants' own contributions vest immediately; ICON's matching
contributions are subject to a three-year vesting schedule.  (Id. at ¶ 51; Ans. ¶ 51.)  The Plan's
administrative expenses are paid using Plan assets.  (Compl. at ¶ 55; Ans. ¶ 55.)

Named Plaintiffs are former ICON employees who participated in the Plan during the
proposed Class Period.  (Compl. at ¶¶ 17–21.)

Plaintiffs plead the following claims:

- Count I: The Plan Committee and individual Plan Committee members breached their
  fiduciary duty of prudence by selecting and retaining high-cost investment options, wasting
  assets, and creating unnecessary costs.  (Id. at ¶¶ 58, 101-07); 29 U.S.C. §§ 1002(21)(A),
  1104(a), 1105(a), 1109(a), 1132(a)(2); and

- Count II: ICON, its Board, and individual Board members failed to adequately monitor the
  Plan Committee and other fiduciaries.  (Id. at ¶¶ 108–14); 29 U.S.C. §§ 1109(a),
  1132(a)(2).

Plaintiffs contend that they are entitled to "equitable relief and other appropriate relief" pursuant
to 29 U.S.C. §§ 1109(a), 1132(a)(2).  (Id. at ¶¶ 106, 114, Prayer for Relief.)  They further contend

that each Defendant is liable for the breaches of its co-fiduciaries pursuant to 29 U.S.C. § 1105(a).

## A.  Procedural Background

On July 6, 2021, the Parties submitted to me a Proposed Case Management Plan, which I largely adopted in my July 20 and 21, 2021 Scheduling Orders.  (Doc. Nos. 16, 18, 20.)  In accordance with the Scheduling Orders, on September 27, Plaintiffs moved for Class Certification.  (Doc. No. 21.)  On November 19, Defendants moved for Summary Judgment.  (Doc. No. 23.)  Both motions were vigorously contested.  (See Doc. Nos. 21–23, 26–27.)  Before all briefs were filed, however, and before I made either a class certification or a summary judgment decision, the Parties informed my Chambers that they had reached a classwide settlement.  (Doc. No. 28.)

On January 28, 2022, Plaintiffs filed an "Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice, Approval of Plan Allocation, and Scheduling of a Fairness Hearing."  (Doc. No. 30.)  On March 10, 2022, after a preliminary approval hearing, I conditionally certified the Settlement Class under Rule 23(b)(1) as to all Counts, appointed Class Representatives and Class Counsel, granted preliminary approval of the Settlement and proposed Plan of Allocation, and appointed JND Legal Administration as the Settlement Administrator.  (Doc. No. 34.)  Plaintiffs now move for final approval of the Settlement Agreement and for approval of an award of attorneys' fees and incentive awards.  (Doc. Nos. 35, 36.)  I conducted a final approval hearing on July 11, 2022.

## II.    DISCUSSION

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "While the law generally favors settlement in complex or class action cases for its conservation of judicial resources, the court has an obligation to ensure that any settlement reached protects the interests of the class members."  In

re Aetna Inc., MDL No. 1219, 2001 WL 20928, at *4 (E.D. Pa. Jan. 4, 2001) (citing In re Gen.

Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig., 55 F.3d 768, 784 (3d Cir. 1995)).

### A. Settlement Class Certification: Rule 23 Analysis

On March 10, 2022, I conditionally certified the following Settlement Class under Rule

23(b)(1) as to all Counts:

> All persons who participated in the Plan at any time during the Class Period,
> including any Beneficiary of a deceased Person who participated in the Plan at any
> time during the Class Period, and any Alternate Payee of a Person subject to a
> [Qualified Domestic Relations Order] who participated in the Plan at any time
> during the Class Period.  Excluded from the Settlement Class are Defendants and
> their Beneficiaries.

(Doc. No. 34 at 3, 11.)

No Class Member objected to class certification.  For the reasons that follow, and solely

for the purpose of settlement in accordance with the Settlement Agreement, I will now finally

certify the Settlement Class.

### Rule 23(a) Requirements

The Settlement Class meets all four Rule 23(a) requirements: "(1) numerosity, (2)

commonality, (3) typicality, and (4) adequacy of representation."  In re Corel Corp. Inc. Secs.

Litig., 206 F.R.D. 533, 539 (E.D. Pa. 2002); Fed. R. Civ. P. 23(a).

First, as Defendants have identified 13,690 members of the Settlement Class, the Class is

so numerous that joinder of all its members is impracticable.  (Mot. for Final Approval at 4, Doc.

No. 35; Gyandoh Decl. ¶ 51, Doc. No. 37); Fed. R. Civ. P. 23(a)(1); see also In re Modafinil

Antitrust Litig., 837 F.3d 238, 249–50 (3d Cir. 2016) ("'[G]enerally if the named plaintiff

demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has

been met'" (quoting Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001))).

Second, as I explained in my Preliminary Certification Order, this matter presents at least the following classwide questions of law or fact: (1) whether Defendants were Plan fiduciaries; (2) whether Defendants breached their fiduciary duties; (3) whether Plaintiffs suffered injury; and (4) whether the Class is entitled to damages.  (Doc. No. 34 at 4); see Fed. R. Civ. P. 23(a)(2); see also In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig., 795 F.3d 380, 399 (3d Cir. 2015) (commonality requirement satisfied where the plaintiffs "alleged that the class was subjected to the same kind of illegal conduct by the same entities, and that class members were harmed in the same way, albeit to potentially different extents").

Third, the claims and defenses of the Class Representatives are typical of the claims of the Class, and their interests align with those of absent Class Members.  Fed. R. Civ. P. 23(a)(3).  The Class Representatives are all former ICON employees who participated in the Plan during the Class Period.   Defendants' alleged breaches of fiduciary duties harmed all Class Members similarly.  See Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 598 (3d Cir. 2012) ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class."  (citing Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992))).

Finally, the Class Representatives and Class Counsel have "fairly and adequately protect[ed] the interests of the Class."  Fed. R. Civ. P. 23(a)(4).  The Class Representatives' interests do not conflict with the interests of other Class Members.  See Gates v. Rohm & Haas Co., 248 F.R.D. 434, 441 (E.D. Pa. 2008) (inquiring into "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class" (citations and quotations omitted)).  Accordingly, I will finally appoint Carlos O. Nesbeth, Amit

Godambe, Jenny Gallery, Misty Howell, and Micah Webb as Class Representatives.  In addition, Class Counsel have pursued this lawsuit vigorously and have demonstrated sufficient knowledge and experience in ERISA matters, thus satisfying the requirements of Rule 23(g).  Fed. R. Civ. P. 23(g).

### Rule 23(b) Requirements

As I explained in my Preliminary Certification Order, I will certify the Settlement Class under Rule 23(b)(1).

These claims may be certified under Rule 23(b)(1)(B) because prosecuting separate actions would create a risk of adjudications that "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications."  Fed. R. Civ. P. 23(b)(1)(B).  "[G]iven the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief."  In re Ikon Office Solutions, Inc., 191 F.R.D. 457, 466 (E.D. Pa. 2000); Mehling v. New York Life Ins. Co., 246 F.R.D. 467, 476 (E.D. Pa. 2007) ("Because Plaintiffs are alleging a breach of fiduciary duty, any findings as to Defendants' alleged breach in an individual suit will affect the interests of Plan participants not parties to the suit.").

Certification is also appropriate under Rule 23(b)(1)(A) because "inconsistent or varying adjudications with respect to individual class members . . . would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A); see In re Citigroup Pension Plan ERISA Litig., 241 F.R.D. 172, 179–80 (S.D.N.Y. 2006) ("The language of subdivision (b)(1)(A), addressing the risk of 'inconsistent adjudications," speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'" (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591,

614 (1997)).

**B. Notice**

I must "'determine that notice was appropriate before evaluating'" the Settlement on its merits.  Alexander v. Washington Mut., Inc., No. 07-4426, 2012 WL 6021098, at *6 (E.D. Pa. Dec. 4, 2012) (quoting In re Am. Investors Life Ins. Co. Annuity Marketing and Sales Practices Litig., 263 F.R.D. 226, 237 (E.D. Pa. 2009)).  There are no objections to the Class Notice or its implementation.

On March 10, 2022, I ruled that the proposed Notice and Settlement Notice Plan satisfied the requirements of Rule 23(e) and due process, and were otherwise fair and reasonable.  (Doc. No. 34 at 9–10.)

After I preliminarily certified the Class, Notice was distributed in accordance with my Preliminary Approval Order.  Defendants provided Settlement Administrator JND Legal Administration with the Class Members' contact information.  (Mot. for Final Approval at 4; Gyandoh Decl. ¶ 51; Bahry Decl. ¶ 6, Doc. 37-2.)  JND Legal distributed the Notice to Class Members via first class mail and, if available, by email as well.  (Mot. for Final Approval at 4–5.) Initially, 821 of the mailed Notices were returned, but JND Legal was able to re-mail 683 of those Notices after obtaining updated addresses.  (Mot. for Final Approval at 5; Bahry Decl. ¶ 11.)  JND Legal also emailed 13,252 Class Members with valid email addresses.  (Mot. for Final Approval at 5; Bahry Decl. ¶ 8.)  In total, 13,676 of the 13,690 Class Members were emailed or mailed a Notice that was not returned as undeliverable.  (Mot. for Final Approval at 5; Bahry Decl. ¶ 13.) JND Legal also posted the Notice on a dedicated website and created a toll-free phone number for Class Members to call for more information.  (Mot. for Final Approval at 5–6; Bahry Decl. ¶¶ 15– 16.)  The Class Notice adequately informed Class Members of the subject of the lawsuit; the

definition of the Class; the terms of the Settlement; Class Counsel's intent to request attorneys' fees, expenses, and service awards for Class Representatives; where to find additional information; and the details of the final fairness hearing, including the time, the place, and how to present objections.

In these circumstances, I conclude that the Class Notice and distribution of that Notice fully satisfies the requirements of 23(e) and due process.  See Lachance v. Harrington, 965 F. Supp. 630, 636 (E.D. Pa. 1997) ("In order to satisfy due process, notice to class members must be 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

## C.  Fairness, Adequacy, and Reasonableness of Proposed Settlement

Under Rule 23, I may approve a settlement where, as here, it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Settlement Agreement provides for the creation of a $950,000 common fund—less Class Counsel's fees and costs, administrative costs, and incentive payments to the Class Representatives—for participants in the ICON Clinical Research, LLC 401(k) Plan during the Class Period.  (Mot. for Final Approval at 3–4.)  This payment will be allocated on a *pro rata* basis among the Class Members, based on Class Members' account balances in each year of the class period.  (Id.; Plan of Allocation at 2, Doc. No. 37-1 at 42–45.) The Settlement Administrator will deposit final payouts directly into the accounts of all Class Members with active Plan accounts.  (Plan of Allocation at 2–3.)  The Settlement Administrator will send checks to Class Members without active accounts.  (Id. at 3–4.)  In exchange, the Class Members will release and dismiss with prejudice all claims related to this action against Defendants and Defendants' insurers.  (Mot. for Final Approval at 4; Settlement Agreement §§

1.37, 1.38, Doc. No. 37-1 at 6–8.) <u>see also</u> <u>Scott v. Bimbo Bakeries USA, Inc.</u>, No. 10-3154, 2015 WL 8764491, at *3 (E.D. Pa. Dec. 15, 2015) ("It is settled law within this Circuit that 'a judgment pursuant to a class settlement can bar later claims on the allegations underlying the claims in the settled class action.'" (quoting <u>In re Prudential Ins. Co. of Am. Sales Practice Litig.</u>, 261 F.3d 355, 366 (3d Cir. 2001)).

### *Presumption of Fairness*

A proposed class action settlement should be afforded a presumption of fairness if: "(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. <u>In re Cendant Corp. Litig.</u>, 264 F.3d 201, 232 n.18 (3d Cir. 2001); <u>In re CertainTeed Fiber Cement Siding Litig.</u>, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("The presumption of fairness may attach even where a class is certified for settlement purposes only . . . ."). Here, the Settlement is entitled to a presumption of fairness because: (1) the Parties' Settlement Agreement is the result of vigorous, bona fide, arm's length negotiations; (2) the Parties conducted significant discovery as to class certification and the merits; (3) Class Counsel have demonstrated that they are experienced in litigating ERISA class actions; and (4) no Class Member has objected to the Settlement Agreement. Moreover, Defendants retained an independent fiduciary—Gallagher Fiduciary Advisors, LLC—which, after reviewing the Settlement Agreement and related documents, concluded that the Settlement was fair, reasonable, and adequate. (Notice of Non-Opposition to Plaintiffs' Motion for Final Approval of Class Action Settlement, Doc. No. 38; Gallagher Report, Doc. No. 38-2; <u>see</u> <u>In re Sprint Corp. ERISA Litig.</u>, 443 F. Supp. 2d 1249 (D. Kan. 2006) ("The court fully credits the parties' judgment, as well as the independent fiduciary's opinion, that the settlement is fair and reasonable.").

***Fairness, Adequacy, and Reasonableness Factors***

The Third Circuit has identified nine factors to assist courts in determining whether a class

action settlement should be approved as "fair, adequate and reasonable."  Girsh v. Jepson, 521

F.2d 153, 157 (3d Cir. 1975).  These factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; and (9)
> the range of reasonableness of the settlement fund in light of all the attendant risks
> of litigation.

In re Cendant, 264 F.3d at 232.  When appropriate, courts should also consider:

> (10) the maturity of the underlying substantive issues, as measured by experience
> in adjudicating individual actions, the development of scientific knowledge, the
> extent of discovery on the merits, and other factors that bear on the ability to assess
> the probable outcome of a trial on the merits of liability and individual damages;
> (11) the existence and probable outcome of claims by other classes and subclasses;
> (12) the comparison between the results achieved by the settlement for individual
> class or subclass members and the results achieved—or likely to be achieved—for
> other claimants; (13) whether class or subclass members are accorded the right to
> opt out of the settlement; (14) whether any provisions for attorneys' fees are
> reasonable; and (15) whether the procedure for processing individual claims under
> the settlement is fair and reasonable.

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998)

(numbers added).  Applying these factors, I conclude that the Settlement is fair, adequate, and

reasonable.

### ***Girsh* Factors**

*Factor One: Complexity, Expense, and Likely Duration of Litigation*

This factor supports the Settlement Agreement.  Like all ERISA matters, this case is

complex.  See Wachtel v. Health Net, Inc., 482 F.3d 225, 237 (3d Cir. 2007) ("ERISA is an

enormously complicated statute."); (see also Final Approval Hrg. Tr. 5:20 – 23, July 11, 2022, Doc. No. 41 ("[T]he first factor, the complexity[,] expense and the likel[ihood] to reach litigation. This is a case that had the dust settled, we would likely [have gone] the distance.").) The Parties' briefings on Defendants' Motion for Summary Judgment revealed thorny disputed issues of law and fact. Cf. In re Ikon Office Sols., Inc. Sec. Litig., 209 F.R.D. 94, 104 (E.D. Pa. 2002) (approving settlement where there were "numerous [pending] complex issues" under ERISA).

Had the Parties not reached a settlement agreement, Plaintiffs report that both sides would have had significant additional costs, including conducting additional discovery. (Mot. for Final Approval at 8–9.) Moreover, trial would have been complex, and the Parties would have expended significant amounts of time and money preparing for trial. (Id. at 9.) Accordingly, the Parties will benefit from the time and resources saved by avoiding further litigation. See In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 437–38 (3d Cir. 2016) as amended (May 2, 2016); Fleisher v. Fiber Composites, LLC, Civ. No. 12-1236, 2014 WL 866441, at *11 (E.D. Pa. Mar. 5, 2014).

*Factor Two: The Reaction of the Class to the Settlement*

As I have explained, JND Legal successfully distributed Notice to 13,676 of the 13,690 Class Members via first class mail and, where available, by email. Of the 13,690 Notices mailed, 821 were returned as undeliverable. (Mot. for Final Approval at 5.) JND Legal subsequently obtained an updated address for 683 of these Class Members. (Id.) In addition, JND Legal successfully emailed Notice to 13,252 Class Members. (Id.) JND Legal could not find valid physical or email addresses for just 14 Class Members. (Id.) No Class Members have objected to the Settlement Agreement. See Chakejian v. Equifax Info. Servs., LLC, 275 F.R.D. 201, 212 (E.D. Pa. 2011) ("Courts have generally assumed that 'silence constitutes tacit consent to the

agreement.'" (internal citation omitted)).  Accordingly, this factor favors the Settlement.

*Factor Three: The Stage of the Proceedings and the Amount of Completed Discovery*

I must next consider "the degree of case development that class counsel have accomplished prior to settlement," and whether Class Counsel appreciated the merits of Plaintiffs' case before settlement negotiations.  In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liabl. Litig., 55 F.3d at 813.  As I have explained, Defendants' Motion for Summary Judgment conveyed to Plaintiffs the multitude of issues and defenses raised here.  At the time Plaintiffs filed their Motion for Class Certification and Defendants filed their Motion for Summary Judgment, all Parties had completed substantial class discovery.  Moreover, Plaintiffs hired consulting experts to "assess the strengths and weaknesses of their claims, as well as calculate potential Class-wide damages." (Mot. for Final Approval at 10; Gyando Decl. ¶¶ 15, 26–35.)  Accordingly, Class Counsel had "sufficient evidence to conduct meaningful, arms-length negotiations reflecting the relative strengths of the claims."  Mehling v. New York Life Ins. Co., 248 F.R.D. 455, 460 (E.D. Pa. 2008). This factor weighs in favor of Settlement.

*Factors Four, Five, and Six: The Risks of Establishing Liability, Proving Damages, and Maintaining the Class Action Through Trial*

I must next "'survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement.'"  In re CertainTeed, 303 F.R.D. at 217 (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004)) (addressing Factors Four through Six together).  In their Motion for Final Approval, Class Counsel acknowledged that Plaintiffs had risks on liability, damages, and class certification.  (Mot. for Final Approval at 10–12.)  The Settlement Agreement was reached after class certification briefing was completed but before briefing was completed on summary judgment and before either motion was decided.  Defendants argued, *inter alia*, that Plaintiffs

lacked standing, rendering class certification inappropriate. (Doc. No. 22.) As there is no guarantee that the Class would have been certified as to both Counts or that Plaintiffs' claims would have survived summary judgment, the Parties' decision to settle avoids risks attendant to liability and class certification.

Moreover, as Class Counsel stated regarding damages: "a battle of experts presenting differing damages calculations would ensue," creating additional uncertainty. (Mot. for Final Approval at 11.) Plaintiffs thus would have faced substantial challenges in establishing remedies. See Mehling, 248 F.R.D. at 461 ("[D]etermining the amount of loss to the Plans would be complex and highly contested" where "proving damages would involve a 'battle of the experts.'").

Accordingly, as the risks respecting class certification, liability, and damages are outweighed by the immediate benefits of the Settlement Agreement, these factors weigh in favor of Settlement.

*Factor Seven: Ability of Defendants to Withstand a Greater Judgment*

Plaintiffs concede that "ICON could likely withstand a judgment in an amount larger than the Settlement amount." (Mot. for Final Approval at 13.) This factor weighs against the Settlement, although not substantially so. Cf. In re Flonase Antitrust Litig., 951 F. Supp. 2d 739, 744–45 (E.D. Pa. 2013) ("I follow my district court colleagues within the Third Circuit who 'regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts.'" (quoting Bredbenner v. Liberty Travel, Inc., Civ. No. 09-905 (MF), 2011 WL 1344745, at *15 (D.N.J. Apr. 8, 2011))); Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011) ("[T]his factor is most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement.").

*Factors Eight and Nine: Range of Reasonableness of Settlement Fund in Light of Best Possible Recovery and Attendant Risks of Litigation*

These final <u>Girsh</u> Factors are intended to "'evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case.'"   <u>In re CertainTeed</u>, 303 F.R.D. at 218 (internal quotation omitted).   The Settlement Agreement provides real monetary relief to the Class Members.   Plaintiffs estimate that their maximum recovery, had this matter proceeded to trial, would have been $1.9 million.   (Mot. for Final Approval at 14.)   They also acknowledge that they faced a $0 recovery if Defendants succeeded at summary judgment or trial.   (<u>Id.</u>)   The $950,000 settlement thus represents 50% of the best possible recovery.   The Settlement thus falls well within the range of reasonableness when considering the risks of continued litigation.   <u>See In re Cendant Corp. Litig.</u>, 264 F.3d at 241 (approving a settlement that represented a 36–37% recovery rate and noting "this far exceeds recovery rates of any case cited by the parties." (internal quotations omitted)); <u>see also</u> <u>McDonough v. Toys R Us, Inc.</u>, 80 F. Supp. 3d 626, 646 (E.D. Pa. 2015) ("Here, the settlement amount represents approximately 24 percent of estimated actual damages.   I have previously found a 15 percent recovery to be reasonable.   Other Judges on this Court have upheld far smaller settlements." (internal citations omitted)).   This factor weighs in favor of the Settlement.

### ***Prudential* Factors**

To the extent that they are relevant, the <u>Prudential</u> Factors also support the Settlement Agreement: the litigation was sufficiently advanced that Class Counsel could assess the probable outcome of a trial; Class Counsel's requested attorneys' fees are reasonable (as I discuss below); and the procedure for distribution is reasonable as the Settlement will be distributed directly into Class Members' active Plan accounts or by check to Class Members without an active account. Although Class Members are not able to opt out of the Settlement, as I have explained, this matter

was appropriate for certification pursuant to Rule 23(b)(1).

In sum, upon review of the record and settlement documents, and after conducting two hearings and applying the <u>Girsh</u> and <u>Prudential</u> Factors, I find that the Settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2); <u>see also</u> <u>In re Nat'l Football League Players Concussion Injury Litig.</u>, 821 F.3d at 444 ("In the end, this settlement was the bargain struck by the parties, negotiating amid the fog of litigation.  If we were drawing up a settlement ourselves, we may want different terms or more compensation . . . . But our role as judges is to review the settlement reached by the parties for its fairness, adequacy, and reasonableness.").

Accordingly, I will grant final approval of the Settlement pursuant to Rule 23(e).

### *Approval of Proposed Allocation Plan*

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate."  <u>In re Ikon Office Solutions, Inc. Sec. Litig.</u>, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (internal citation omitted).  Here, each Class Member's share of the Net Settlement Amount is determined based on Members' account balances in each year of the class period.  Accordingly, the Settlement will be distributed to each Class Member in proportion to the sum of that Class Member's balance as compared to the sum of the balance for all Class Members. (Mot. for Final Approval at 12; Plan of Allocation.)  Any Class Member entitled to a distribution of less than $10 (the minimum distribution amount) will receive $10.  (<u>Id.</u>)  The Allocation Plan thus is fair, reasonable, and adequate.  <u>See</u> <u>Mehling</u>, 248 F.R.D. at 463 ("Generally, a plan that reimburses class members based on the nature and extent of their injuries is considered reasonable." (internal citation omitted)).

**D. Fairness and Reasonableness of the Requested Attorneys' Fees, Costs, and Service Awards for Class Representatives**

Plaintiffs have asked me to approve attorneys' fees of $316,635, costs of $14,882.60, and service awards of $10,000 to each Class Representative.  There are no objections to these requests.

### *Attorneys' Fees*

Having appointed Class Counsel in my March 10, 2022 Order, I must now conduct a "thorough judicial review" of Counsel's fee application.  (Mot. for Attys' Fees & Case Contrib. Award, Doc. No. 36); Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 192 (3d Cir. 2000) (quoting In re Prudential, 148 F.3d at 333).  Plaintiffs have submitted extensive briefing and a supporting declaration with respect to the reasonableness of the award.  (See Mot. for Attys' Fees & Case Contrib. Award; Gyandoh Decl.)

"There are two basic methods for calculating attorneys' fees—the percentage-of-recover method and the lodestar method."  In re Prudential, 148 F.3d at 333.  The percentage-of-recovery method—which compares the amount of attorneys' fees sought to the total size of the fund—"is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'"  Sullivan v. DB Inv., Inc., 667 F.3d 273, 330 (3d Cir. 2011) (quoting In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005) as amended (Feb. 25, 2005)).  In determining whether the requested fee award is reasonable under the percentage-of-recovery approach, I must consider:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups . . . (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of

settlement.

In re Diet Drugs, 582 F.3d 524, 541 (3d Cir. 2009) (citing Gunter 223 F.3d at 195 n.1, and In re Prudential, 148 F.3d at 336–40); see also Gunter 223 F.3d at 195 n.1 ("The factors . . . need not be applied in a formulaic way.  Each case is different, and in certain cases, one factor may outweigh the rest.").

The lodestar method "is then used 'to cross-check the reasonableness of a percentage-of-recovery fee award.'"  Sullivan, 667 F.3d at 330 (quoting In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006)); see also In re Rite Aid, 396 F.3d at 307 ("[T]he lodestar cross-check does not trump the primary reliance on the percentage of common fund method.").

*Percentage-of-Recovery and Gunter Factors*

The Gunter factors support the fee award.  I will address briefly each factor here, as I have already considered most of these factors in approving the Settlement Agreement.

First, the Settlement confers benefits on each Class Member.  As I have discussed, this Settlement is reasonable in light of the potential Class recovery.  Second, there are no objections to either the Settlement or the requested attorneys' fees and costs.  With respect to the third and fourth factors, Class Counsel skillfully and vigorously prosecuted this complex ERISA matter and have submitted a declaration documenting their experience in similar matters.  (Gyandoh Decl.) As I have explained, Class Counsel defended against Defendants' Motion for Summary Judgment; conducted substantial discovery on certification and the merits; extensively briefed Class Certification; and engaged in arm's length negotiations before the Parties reached this Settlement. Absent the work of Class Counsel, most Class Members would likely have obtained no recovery. See In re Linerboard Antitrust Litig., No. MDL 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004) ("The result achieved is the clearest reflection of petitioners' skill and expertise.'").  Fifth,

Class Counsel have litigated this matter on a contingency basis, facing the risk of nonpayment if Plaintiffs were not successful. (Mot. for Attys' Fees & Case Contrib. Award at 10.) Sixth, as discussed below, Class Counsel spent a combined 422 hours working on this matter. (Id. at 11–12.) Seventh, the $316,635 award represents one third of the common fund. (Id. at 1.) This requested fee award falls well within the range of reasonableness. See, e.g., Leap v. Yoshida, No. 14-3650, 2015 WL 619908, at *4 (E.D. Pa. Feb. 12, 2015) ("Fee awards in common fund cases generally range from 19% to 45% of the fund."); In re Schering-Plough Corp. Enhance ERISA Litig., No. 08-1432, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) (finding that a 33.3% fee award was reasonable). The eighth factor is irrelevant because there are no other groups. Ninth, the requested fee is comparable to or less than the amount Counsel would likely have received had this case been subject to a private contingency fee arrangement. In re CertainTeed, 303 F.R.D. at 224 ("In private contingency cases, lawyers routinely negotiate agreements for between 30% and 40% of the recovery." (internal citation omitted)); In re Schering-Plough Corp. Enhance ERISA Litig., 2012 WL 1964451, at *7 (same). Finally, this Settlement and Plan of Allocation are similar to those approved in other ERISA class action settlements. (Final Approval Hrg. Tr. 7:17–8:5.)

*Lodestar Cross Check*

I will use the lodestar method "'to cross-check the reasonableness of a percentage-of-recovery fee award.'" Sullivan, 667 F.3d at 330 (quoting In re AT&T, 455 F.3d at 164). I must multiply "the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." In re Rite Aid, 396 F.3d at 305. Here, the lodestar calculation is $279,901.50—422 hours at rates ranging from $250 to $885 per hour. (Gyandoh Decl. ¶ 71); In re Rite Aid, 396 F.3d at 306–07 ("The lodestar cross-check calculation need entail neither

mathematical precision nor bean-counting.  The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.").  Having reviewed the declaration submitted by Counsel, I am satisfied that these hourly rates are reasonable given the complexity of this ERISA action and the skill and experience of the attorneys involved.  (Gyandoh Decl. ¶¶ 76, 80–90); see also In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 886 F. Supp. 445, 477 (E.D. Pa. 1995) ("Similarly, the complex and difficult nature of this class action ERISA case demands a quality of service for which relatively expensive representation is to be expected."). The rates, moreover, are "commensurate with the firm's degree of skill, experience, and reputation" as well as the national market rate. (Gyandoh Decl. ¶¶ 80–90); cf. Missouri v. Jenkins by Agyei, 491 U.S. 274, 285 (1989) ("In determining how other elements of the attorney's fee are to be calculated, we have consistently looked to the marketplace as our guide to what is 'reasonable.'"); Frommert v. Conkright, 223 F. Supp. 3d 140, 151 (W.D.N.Y. 2016) ("I find that plaintiffs have demonstrated that the subject matter—ERISA benefits, involving numerous beneficiaries—required special expertise, that it was reasonable for plaintiffs to use out-of-district counsel, and that the hourly rates to be applied here are not strictly bound by what would be typical for counsel from this district."); Amos v. PPG Indus., Inc. No. 2:05-70, 2015 WL 4881459, at *9 (S.D. Ohio Aug. 13, 2015) ("In ascertaining the proper community, district courts may look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases." (internal quotations and citations omitted)).

When Class Counsel's requested fee ($316,635) is divided by the lodestar calculation ($279,901.50), the lodestar multiplier is 1.13, well within the range of reasonableness.  See In re Prudential, 148 F.3d at 341 ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.").  Again, this multiplier is justified by

the complex nature of this ERISA class action, the skill and experience of Class Counsel, and the relief obtained for the Class.  See In re Rite Aid, 396 F.3d at 306 ("Even when used as a cross-check, courts should explain how the application of a multiplier is justified by the facts of a particular case." (internal quotations omitted)).

### Litigation Expenses

Class Counsel have requested reimbursement of $14,882.60 in costs and expenses.  Fed. R. Civ. P. 23(h).  This request comprises ordinary litigation expenses such as filing fees, research, deposition transcripts, and attorney travel.  (Gyandoh Decl. ¶¶ 69–70.)  I am satisfied that these expenses were reasonably and appropriately incurred during the year and a half in which Class Counsel have prosecuted this action.  See, e.g., In re Ikon, 194 F.R.D. at 192 ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund." (emphasis in original)).  Accordingly, I will approve Class Counsel's request for reimbursement of expenses.

### Service Awards for Class Representatives

I have appointed Carlos O. Nesbeth, Amit Godambe, Jenny Gallery, Misty Howell, and Micah Webb as Class Representatives.  Each Class Representative now seeks a $10,000 service award, to which there is no objection.  "The approval of contribution or incentive awards is common, especially when the settlement establishes a common fund."  In re CertainTeed, 303 F.R.D. at 225 ("'The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws.'" (quoting Sullivan, 667 F.3d at 333 n.65)).

The Class Representatives have expended time and effort on this litigation.  They engaged

counsel, reviewed the Complaint; made themselves available to discuss litigation; provided information and documents; participated in teleconferences; prepared for depositions; and reviewed, considered, and approved the proposed Settlement.  (Gyandoh Decl. ¶ 92; Nesbeth Decl., Doc. No. 37-9; Godambe Decl., Doc. No. 37-10; Gallery Decl., Doc. No. 37-11; Howell Decl., Doc. No. 37-12; Webb Decl., Doc. No. 37-13.)  In these circumstances, the $10,000 service award is reasonable and warranted.  See Mayer v. Driver Solutions, Inc., No. 10-CV-1939 (JCJ), 2012 WL 3578856, at *5 (E.D. Pa. Aug. 17, 2012) (approving a $15,000 contribution award for class representatives); Bernhard v. TD Bank, N.A., Civil No. 09-4392 (RBK/AMD), 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009) ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." (quoting Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000)).

In sum, I will approve as reasonable the requests for attorneys' fees, reimbursement of litigation expenses, and service awards.

## III.   CONCLUSION

For the foregoing reasons, I will grant Plaintiffs' Motions for Final Approval of Class Action Settlement and for an Award of Attorneys' Fees and Reimbursement of Expenses and a Lead Plaintiff Case Contribution Award.  (Doc. Nos. 35, 36.)  An appropriate Judgment follows.


**AND IT IS SO ORDERED.**


*/s/ Paul S. Diamond*
_____

July 20, 2022                                                    Paul S. Diamond, J.